IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIGHTSTYLES, LTD, by and through | : | |
| its bankruptcy trustee, LEON P. | : | |
| HALLER, | : | CIVIL NO. 1:13-CV-1510 |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | |
| MARVIN LUMBER AND CEDAR | : | |
| COMPANY, d/b/a MARVIN | : | |
| WINDOWS AND DOORS, | : | |
| Defendant | : | |
| | : | |

*M E M O R A N D U M*

I. *Introduction*

Plaintiff, Leon P. Haller, as the trustee in bankruptcy for LightStyles, LTD,

filed this lawsuit alleging several causes of action based on the decision of defendant,

Marvin Lumber and Cedar Company, /d/b/a Marvin Windows and Doors, to terminate its

business relationship with LightStyles.  LightStyles was formerly a distributor for Marvin's

windows and doors and asserts that Marvin's decision forced it into bankruptcy.  Marvin

has counterclaimed against LightStyles and has sued Robert Slagle, LightStyles'

principal, as a third-party defendant.  Marvin claims that LightStyles and Slagle

fraudulently induced it to continue the business relationship and that Slagle made false

statements about Marvin to LightStyles' customers in the period before the business

relationship ended.

We are considering Marvin's motion to compel compliance with five subpoenas issued in connection with discovery in the case.

II.   *Discussion*

      A.   *Redacted Portion of the Engagement Letter and*
           *Robert Slagle's Notes and Draft Letter*

Marvin subpoenaed certain documents from McNees Wallace and Nurick, the law firm LightStyles retained to represent it during the time the parties were dissolving their relationship.  Marvin has two complaints about LightStyles' response to that subpoena.  First, LightStyles supplied Marvin with a copy of the law firm's engagement letter but improperly redacted one line.  According to the law firm's attorney who represented LightStyles at this time, the redacted line contained a description of "the general nature of the services" he would be providing LightStyles.  (Doc. 71-1, ECF p. 12).  Second, LightStyles has refused to turn over notes and a draft letter that Robert Slagle, LightStyles' principal, prepared in connection with his initial meeting with the law firm.  In both instances, LightStyles has invoked the attorney-client privilege.

In moving to compel production of the unredacted engagement letter, Marvin argues that engagement letters are discoverable "when they simply contain information related to the scope of the representation, the fee amount, and the fact that an attorney has been engaged."  (Doc. 67, ECF p. 9).  Marvin cites in support *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977); *Colton v. United States*, 306 F.2d 633, 636 (2d Cir. 1962); *Breslin v. Dickinson Twp.*, No. 09-CV-1396, 2011 WL

2926665 (M.D. Pa. July 18, 2011); and *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013).  In opposition, LightStyles also cites *Levy*, but in support of its contention that the redacted line is privileged because it is a "description[ ] of legal services that address the client's motive for seeking counsel."  Levy, 65 A.3d at 373.

We have carefully considered Marvin's arguments, including the one based on *Levy* in its reply brief.  We believe that the redacted line in the engagement letter should be protected.  It is not just a "generic" description of services, *Levy*, 65 A.3d at 373 ("telephone call" given as an example of a "generic" description not subject to privilege), but goes beyond that.  *See Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999)(billing records are privileged when "they reveal the nature of the services rendered").

We move onto the notes and the draft letter.  Citing *Larson v. Harrington*, 11 F. Supp. 2d 1198, 1203 (E.D. Cal. 1998), Marvin argues these are not privileged because Slagle prepared them on his own initiative.

We disagree.  There is no dispute that Slagle prepared these notes and letter in anticipation of his initial meeting with lawyers from McNees Wallace and Nurick and to assist him at that meeting.  It is also undisputed that he turned them over to his lawyers.  In these circumstances, as LightStyles argues, the notes and letter are privileged.  *See United States v. DeFonte*, 441 F.3d 92, 95-96 (2d Cir. 2006); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-CV-1827, 2009 WL 2905898, at *2 (N.D. Cal.

2009); *Clark v. Buffalo Wire Works Co., Inc.*, 190 F.R.D. 93, 95-96 (W.D.N.Y. 1999);

*Angst v. Mack Trucks*, 1991 WL 86931, at *2 (E.D. Pa. May 14, 1991).

### B. *The Lucent Subpoena*

Lucent Window and Door Co., LLC, is a company formed after LightStyles

went into bankruptcy.  Slagle is a principal in Lucent and has an ownership interest as

well.  Marvin asserts it is entitled to discovery of certain information from Lucent because

it is "interrelated" with LightStyles, is engaged in the same business as LightStyles was,

and that the business information sought is relevant to the following issues; (1) mitigation

of LightStyles' damages; (2) Slagle's defamation of Marvin; (3) whether LightStyles ever

really went out of business if Lucent is just a continuation of LightStyles; and (4) whether

Marvin's termination was the actual cause of LightStyles' bankruptcy as opposed to

LightStyles' questionable financial practices.

After review of Marvin's position, we agree with LightStyles that the

connection between the two companies is not enough to allow discovery of most of the

information sought.  However, we will require Lucent to respond to the following requests

made in the subpoena: requests no. 8 and 16 through 20.

### C. *The Subpoenas to Susan D. Slagle and to Michael R. Deremer*

We have reviewed the parties' briefs on the subpoenas issued to Susan D.

Slagle and Michael R. Deremer.  Marvin's motion to compel enforcement of these

subpoenas will be denied.  However, Marvin is free to depose these two individuals on

-4-

the historical knowledge they have about Slagle and LightStyles relating to LightStyles' insolvency, and business practices (including its accounts-receivable practices).

D. *The Mikerin Subpoena*

Slagle formed Mikerin in 1992, and he represents that it is currently a servicing agent for Pacific Crest Doors and does not compete with Marvin. Marvin's reasons for seeking the information essentially duplicates those mentioned in regard to the Lucent subpoena. Its reply brief adds that Mikerin, as the last Slagle entity still existing, is "a likely candidate for hiding assets," (Doc. 78, ECF p. 9), so the information sought "can be used to confirm whether Robert Slagle or LightStyles improperly transferred assets to or from Mikerin." (*Id.*, ECF p. 10).

The motion to compel enforcement of this subpoena will be denied as the information sought does not appear to be relevant nor would it lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

May 21, 2014