IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LIGHTSTYLES, LTD, by and through :
its bankruptcy trustee, LEON P.  :
HALLER,         : CIVIL NO. 1:13-CV-1510
    Plaintiff     :
           :  (Judge Caldwell)
  v.        :
           :
MARVIN LUMBER AND CEDAR :
COMPANY, d/b/a MARVIN   :
WINDOWS AND DOORS,   :
    Defendant   :
           :

*M E M O R A N D U M*

I. *Introduction*

    Plaintiff, Leon P. Haller, as the trustee in bankruptcy for LightStyles, LTD

("LightStyles"), filed this lawsuit alleging several causes of action based on the decision

of defendant, Marvin Lumber and Cedar Company, /d/b/a Marvin Windows and Doors

("Marvin"), to terminate its business relationship with LightStyles.  LightStyles was

formerly a distributor for Marvin and asserts that Marvin's decision forced it into

bankruptcy.  Marvin has counterclaimed against LightStyles and has sued Robert Slagle,

LightStyles' principal, as a third-party defendant.  Marvin claims that LightStyles and

Slagle fraudulently induced it to continue the business relationship and that Slagle made

false statements about Marvin to LightStyles' customers in the period before the business

relationship ended.  Marvin says that a part of the fraud involved the misuse of

LightStyles' account receivable from Marvin Window & Door Showplace ("Showplace"), a customer of LightStyles that was owned by Slagle.

We are considering Marvin's motion to compel responses to its two sets of Requests for Admission (RFAs), one set sent to LightStyles and the other to Slagle. LightStyles admitted some of the RFAs and responded to others by way of objection and answer.  Slagle responded by way of objection and answer.  Marvin contends the responses are inadequate.  As relief, it seeks an order stating that the requests have been admitted.

II.   *Discussion*

A.  *Relevant Law*

Fed. R. Civ. P. 36 governs requests for admission.  In relevant part, Rule 36(a)(1)(A), permits a party to serve upon another party "a written request to admit . . . facts, the application of law to fact, or opinions about either . . . ."  The responding party can admit the request but if it "is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Rule 36(a)(4). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  *Id.*  "Generally, the use of only the word 'denied' is sufficient to comply with the rule."  *Bisker v. GGS Info. Services, Inc.*, No. 07-CV-1465, 2009 WL 3241675, at *2 (M.D. Pa. Oct. 1, 2009)(Caldwell, J.)(citing *United*

*Coal Companies v. Powell Constr. Co.,* 839 F.2d 958, 967 (3d Cir. 1988)).  A party can respond to a request by asserting it can neither admit nor deny it, but if it does so, it must be based upon a "lack of knowledge or information" and "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Rule 36(a)(4).  A party may also object to the request but must state the grounds for doing so.  Rule 36(a)(5).

If a party responds to a request by asserting it can neither admit nor deny it, Rule 36(a)(4) indicates that in making the response, the party may quote the language of the Rule and assert a lack of knowledge after having "made reasonable inquiry and [concluding] that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Thus, a response that fails to include the language that a "reasonable inquiry" was made is deficient.  *See Panara v. Hertz Penske Truck Leasing, Inc.*, 122 F.R.D. 14, 17 (E.D. Pa. 1988).  However, the courts also require more than just a recitation of the Rule's language.  *See, e.g., Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1246-47 (9th Cir. 1981).  The answering party must also explain in some detail why the request cannot be affirmed or denied.  *Moeck v. Pleasant Valley Sch. Dist.*, No. 13-CV-1305, 2014 WL 4446730, at *3 (M.D. Pa. Sept. 10, 2014)(quoting *Philadelphia Gear Corp. v. Techniweld, Inc.,* 1992 WL 99622, at *2 (E. D. Pa. May 1, 1992)).

Rule 36 is intended "to narrow the issues for trial, or even altogether obviate the need for trial."  *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992).  The requesting party "'may not present . . . a broad and non-specific request for

admissions of facts.'" *Illes v. Beaven*, No. 12-CV-395, 2013 WL 522075, at *4 (M.D. Pa.

Feb. 11, 2013)(Caldwell, J.)(quoting *McCarthy v. Darman,* No. 07–3958, 2008 WL

2468694, at *2 (E.D. Pa. June 17, 2008)).  Instead, a request should "'be in simple and

concise terms in order that it can be denied or admitted with an absolute minimum of

explanation or qualification.'"  *Id.* (quoting *United Coal Companies, supra,* 839 F.2d at

967-68 (quoted case omitted)).  "'To compel answers to vague and indefinite questions

capable of more than one interpretation and which require an explanation thwarts the

purposes of Rule 36(a).'"  *Moeck*, *supra*, 2014 WL 4446730, at *4 (quoted case omitted).

Requests reciting compound factual assertions are improper.  *Caruso v. Coleman Co.*,

1995 WL 347003, at *6 (E.D. Pa. June 7, 1995), and so are requests relating to a pure

matter of law.  *Kutner Buick, Inc. v. Crum & Foster Corp.*, 1995 WL 508175, at *2 (E.D.

Pa. Aug. 24, 1995).

> B.  *The Requests Directed to LightStyles*

Marvin served LightStyles with thirty requests for admission.  LightStyles

admitted requests 5-6, and 19-20, and made a qualified admission to request 28, leaving

twenty-five requests that were disputed.  After review of each request and the objections

and responses, we can group some requests together in addressing defendant Marvin's

motion.

> 1.  *RFAs 1 Through 4*

Requests No. 1 through 4 are as follows:

>ADMISSION NO. 1: Admit that LightStyles did not enter into a written distribution agreement with Marvin at any time.
>
>ADMISSION NO. 2: Admit that LightStyles did not enter into a written franchise agreement with Marvin at any time.
>
>ADMISSION NO. 3: Admit that LightStyles did not pay any money to Marvin to become a distributor of Marvin products.
>
>ADMISSION NO. 4: Admit that LightStyles did not pay a franchise fee to Marvin at any time.

(Doc. 140-1, ECF p. 3). LightStyles objected to each of these requests on the grounds that they were vague and ambiguous. It also responded to each request by a simple denial. (Doc. 140-1, ECF pp. 17-18).

In moving to compel answers to these requests, Marvin contends in part that an objection that they are vague and ambiguous is an attempt to obfuscate what should be a straightforward admission or denial. (Doc. 139, ECF p. 23).

We agree. The requests are simple and concise factual assertions that LightStyles could have admitted or denied. They are not vague or ambiguous. LightStyles did also deny the requests, and a simple denial is generally sufficient, but a denial must fairly respond to the substance of a request. Here, the requests go to elemental factual issues relating to the parties' business relationship; indeed, in its opposition brief, LightStyles admitted request no. 1. (Doc. 144, ECF p. 2 n.1). It went on to qualify that admission, but that qualification should have occurred in its response to the request, not in a brief opposing the requesting party's motion to compel a proper response. LightStyles will be permitted to file amended answers to these requests. If

LightStyles denies the requests, it shall explain the denial.  A simple denial will not do here.

### 2. *RFAs 7 Through 11*

Requests No. 7 through 11 deal with several financial statements that LightStyles provided Marvin from time to time and whether those statements reflected a write off of LightStyles' account receivable from Showplace.  Requests No. 7 through 11 are as follows:

> ADMISSION NO. 7: Admit that the financial statements dated November 30, 2008 that LightStyles provided to Marvin did not reflect a write off of the LightStyles account receivable from Showplace. (MW000862-867)
>
> ADMISSION NO. 8: Admit that the financial statements dated June 30, 2010 that LightStyles provided to Marvin did not reflect a write off of the LightStyles account receivable from Showplace. (MW047893-896)
>
> ADMISSION NO. 9: Admit that the financial statements dated November 30, 2010 that LightStyles provided to Marvin did not reflect a write off of the LightStyles account receivable from Showplace. (MW102410-413)
>
> ADMISSION NO. 10: Admit that the financial statements dated December 31, 2010 that LightStyles provided to Marvin did not reflect a write off of the LightStyles account receivable from Showplace. (MW001287-291)
>
> ADMISSION NO. 11: Admit that the financial statements dated April 30, 2011 that LightStyles provided to Marvin did not reflect a write off of the LightStyles account receivable from Showplace. (MW04827-030)

(Doc. 140-1, ECF pp. 3-4).  LightStyles objected to each of these requests on the grounds that they were vague and ambiguous.  (Doc. 140-1, ECF pp. 19-20).  It also objected to requests no. 8 through 11 on the ground that the requests "called for expert opinion and analysis."  (*Id.*).  Additionally, it responded to all the requests that it could not admit or deny them "based on its review" of the financial statements referred to in each request.  (*Id.*).

In moving to compel, Marvin argues that LightStyles cannot assert vagueness or ambiguity in these requests because Marvin parenthetically cited the relevant financial documents by Bates number and because it included in its Requests For Admission a definitions section defining various terms and entities used in the requests.  Marvin also argues that the "cannot admit or deny" responses on the basis of "its [LightStyles'] review" and the "expert opinion and analysis" responses were inadequate because Trustee Haller (who signed the responses) could not rely on his lack of personal knowledge but had to do "due diligence" before responding.  (Doc. 139, ECF p. 24).  That due diligence should have included talking to Slagle and to Phil Stoltzfus, LightStyles' former controller.

In opposing Marvin on these requests, LightStyles does not address Marvin's argument on vagueness or ambiguity except to say that the definitions section has no bearing on any vagueness or ambiguity in the requests.  LightStyles also argues that its "cannot admit or deny" response was proper because it is no longer in business and it could only consult with Slagle or Stoltzfus.  It did consult with these individuals and

its responses were based on that consultation.  (Doc. 144, ECF p. 13, citing Doc. 144-1 ¶

8, the declaration of Douglas J. Rovens, Plaintiffs' attorney).  It also contends that

Marvin's argument that LightStyles had to say in its response that it had made a

"reasonable inquiry" (an apparent reference to Marvin's due diligence argument) would

"elevate form over substance."  (Doc. 144, ECF p. 14).

        In regard to LightStyles' vague-and-ambiguous objection, we agree with

LightStyles' point on the definitions section of the Requests For Admission.[1]  However,

we disagree that its vague-and-ambiguous objection is valid in regard to these requests;

---

[1]  The requests contained the following definitions:

1.  "The Bank" shall refer to Graystone Bank and its successors, including, but not limited to, Susquehanna Bank.

2.  "LightStyles," "You," or "Your," shall refer to the Plaintiff in this action, its former and present agents, attorneys, employees, entities, affiliate corporations and entities, and anyone acting or purporting to act on its behalf.

3.  "Marvin" shall refer to Defendant Marvin Lumber and Cedar Company, their former and present agents, attorneys, employees, entities, affiliate corporations and entities, and anyone acting or purporting to act on their behalf.

4.  "Showplace" shall refer to Marvin Window and Door Showplace.

5.  "Loan Commitment Letter" shall refer to Deposition Exhibit 22 at SUSQ000695-700.

6.  "Business Loan Agreement" shall refer to Deposition Exhibit 163A at SUSQ000812.

7.  "Certification of Accounts Receivable and Inventory" shall include all documents that appear in a form similar to Deposition Exhibit 22 at SUSQ000701, completed, and signed by Robert Slagle.

(Doc. 140-1, ECF pp. 2-3).

we note that LightStyles did not support its objection in its brief by way of an argument bearing directly on the phrasing of these requests.

We also agree with Marvin that LightStyles "cannot admit or deny" responses were inadequate. LightStyles argues that requiring it to say in its responses that it had made a "reasonable inquiry" would "elevate form over substance." But this is exactly what Rule 36(a)(4) requires. The party must assert in its responses that it has "made reasonable inquiry" if it is going to say that it can neither admit nor deny. Moreover, the answering party must also explain in some detail in its responses why the request cannot be affirmed or denied. It is not sufficient to explain its inquiry in a brief opposing a motion to compel adequate responses, as LightStyles has done here with the Rovens declaration. LightStyles will be required to file amended answers to requests no. 7 through 11.[2]

3. *RFAs 12 Through 14 and No. 21 and 22*

Requests no. 12 through 14 deal with the deletion of line items for three LightStyles customers from a LightStyles Accounts Receivable Aged Invoice Report. Requests no. 12 through 14 are as follows:

> ADMISSION NO. 12: Admit that You deleted the line items for the Showplace account receivable in the Accounts Receivable Aged Invoice Report that you provided to Marvin dated

---

[2]   Our ruling covers another ground LightStyles made for its "cannot admit or deny" response; LightStyles cannot make such a response based simply on "its review" of the request. We also note here LightStyles' objection that "expert opinion and analysis" is required. We do not see the need for expert opinion and analysis, and LightStyles does not explain why it is required.

December 31, 2010.  (*See* Deposition Exhibit 31 at MW001340-55)

ADMISSION NO. 13: Admit that You deleted the line items for the WDWPRON Window & Door Pros account receivable in the Accounts Receivable Aged Invoice Report that you provided to Marvin dated December 31, 2010.  (*See* Deposition Exhibit 31 at MW001340-55)

ADMISSION NO. 14: Admit that You deleted the line items for the WDWPROV Window & Door Pros account receivable in the Accounts Receivable Aged Invoice Report that you provided to Marvin dated December 31, 2010.  (*See* Deposition Exhibit 31 at MW001340-55)

(Doc. 140-1, ECF p. 4).

Requests no. 21 and 22 deal with the redaction of certain information from certain LightStyles' financial statements.  Requests no. 21 and 22 are as follows:

ADMISSION NO. 21: Admit that You redacted the following language in the copy of Your December 31, 2007 and 2006 Financial Statements that You forwarded to Marvin: "The Company had trade accounts receivable with this affiliate in the amount of $5,386,357 and $5,390,901 at December 31, 2007 and 2006, respectively, and sales in the amount of$1,449,236 and $8,180,223 in 2007 and 2006, respectively." (*See* MW048091)

ADMISSION NO. 22: Admit that You redacted the following language in the copy of Your December 31, 2007 and 2006 Financial Statements that You forwarded to the Bank: "The Company had trade accounts receivable with this affiliate in the amount of $5,386,357 and $5,390,901 at December 31, 2007 and 2006, respectively, and sales in the amount of $1,449,236 and $8,180,223 in 2007 and 2006, respectively." (See SUSQ003341)

-10-

(Doc. 140-1, ECF pp. 5-6).[3]  LightStyles' response to each of these requests was that it "lack[ed] sufficient information to admit or deny this request."  (Doc. 140-1, ECF pp. 21-22, 24-25).

In moving to compel answers to these requests, Marvin argues that the answers are inadequate because LightStyles was obligated to conduct a reasonable inquiry and to state in its answers that it did conduct that reasonable inquiry along with a description of the inquiry.  Further, the requests should be deemed admitted because Slagle stated at his deposition that he only met with Trustee Haller once for ten minutes and that this demonstrates that Haller did not conduct the reasonable inquiry required. (Doc. 139, ECF p. 23, citing Doc. 140-1, ECF p. 156, Slagle deposition).

In opposing Marvin on these requests, LightStyles makes the same argument we addressed above in connection with RFAs 7 through 11, that its "cannot admit or deny" response was proper because: (1) its response was based on consultation with the only two individuals who would have had the necessary information, Slagle and Stoltzfus; and (2) Marvin's argument that LightStyles had to say in its response that it had made a "reasonable inquiry" would "elevate form over substance."  (Doc. 144, ECF p. 14).  We have already rejected LightStyles' argument, ruling that a "cannot admit or deny" response requires the answering party to assert in its responses that it has "made reasonable inquiry" and to explain in some detail in its responses why the request cannot be affirmed or denied.

---

[3]  The language of the requests is identical, but the Bates number is different.

LightStyles makes an additional argument on RFAs 12 through 14 and 21 and 22.  It argues the difficulty was in how Marvin drafted the RFAs.  It uses request no. 12 as an example and asserts its argument applies equally to RFAs 13, 14, 21 and 22. In part, request no. 12 reads: "Admit that You deleted the line items for the Showplace account receivable in the Accounts Receivable Aged Invoice Report that you provided to Marvin dated December 31, 2010."  LightStyles asserts "its counsel investigated to determine how that line item was deleted, but could not make the determination, which is consistent with deposition testimony in the case."  (Doc. 144, ECF p. 14).  It therefore responded by saying it could not admit or deny the request.  LightStyles connects this argument to a perceived problem in Marvin's drafting of the RFAs by proposing a "properly drafted" request that LightStyles would have admitted: "Admit that the Accounts Receivable Aged Invoice Report that You provided to Marvin dated December 31, 2010, did not include the Showplace account receivable . . . ."  (Doc. 144, ECF p. 14).

As Marvin points out, the difficulty with this argument is that Marvin did not ask LightStyles to admit how the line item was deleted but that LightStyles deleted it. And Marvin was entitled to a response to its own properly drafted request for admission, not a response to a request the answering party would rather admit.  We will require LightStyles to file amended answers to RFAs 12 through 14 and 21 and 22.

4. *RFAs 15 Through 18*

RFAs 15 through 18 deal with affiliates of Lightstyles and of Lightstyles' shareholders and how the Business Loan Agreement limits LightStyles' borrowing against its accounts receivable if the account debtor is an affiliate of LightStyles or a LightStyles' shareholder.  RFAs 15 through 18 are as follows:

> ADMISSION NO. 15: Admit that the Business Loan Agreement does not allow LightStyles to borrow money from the Bank against receivable accounts if the account debtor is affiliated with LightStyles.  (*See* Deposition Exhibit 163A at SUSQ000812)

> ADMISSION NO. 16: Admit that the Business Loan Agreement does not allow LightStyles to borrow money from the Bank against receivable accounts if the account debtor is affiliated with LightStyles' shareholders.  (*See* Deposition Exhibit 163A at SUSQ000812)

> ADMISSION NO. 17: Admit that from January 2007 - August 15, 2011, Showplace was affiliated with LightStyles.

> ADMISSION NO. 18: Admit that from January 2007 - August 15, 2011, Showplace was affiliated with Robert Slagle, a shareholder of LightStyles.

(Doc. 140-1, ECF p. 5).  LightStyles objected to each of these requests on the grounds that each of them "is vague and ambiguous as to the meaning of affiliated and calls for a legal conclusion."  (Doc. 140-1, ECF pp. 22-23).  LightStyles also denied each request, stating: "Based on LightStyles' understanding of this request, Denied."  (*Id.*).

In moving to compel answers to these requests, Marvin first argues that the vague-and-ambiguous objection lacks merit because Marvin provided the Bates numbers for the documents at issue in each request and because at the beginning of its Requests

For Admissions Marvin placed a definitions section defining various terms and entities used in the requests.  Marvin next  argues that Rule 36 does not allow a request to be denied on the basis of the answering party's "understanding of [the] request."

In its opposition to Marvin's motion, LightStyles essentially concedes that its denial based on its "understanding" of the requests is meritless.  (*See* Doc. 144, ECF p. 20).  Thus, we need only decide whether its objection based on the vagueness or ambiguity of the word "affiliated" has merit.[4]

LightStyles says that "affiliated" is vague and ambiguous because Marvin did not define it and because the Bank did allow LightStyles to borrow against its receivables from Showplace, even though Slagle owned Showplace, when Showplace "was a separate company, with separate bank accounts, separate financing from a different bank and filed separate tax returns." (Doc. 144, ECF p. 16).  LightStyles contends it would have admitted an "appropriate request," one phrased as follows: "Admit that the Business Loan Agreement provides that 'Eligible Accounts do not include (2) Accounts with respect to which the Account Debtor is a subsidiary of, or affiliated with the Borrower . . . ." (*Id.*).  It also points to request no. 19, one which it admitted, as a proper request: "Admit that Note 3 of Your December 31, 2007 and 2006 Financial Statements reads, in part, as follows: 'The Company had trade accounts receivable with this affiliate . . .'. (*See* LS2272257)".  (*Id.* at p. 17).

---

[4]  Marvin did not address the objection that the RFAs called for a conclusion of law. We observe that the objection lacks merit in any event.

In reply, Marvin argues that LightStyles is being disingenuous because in admitting request no. 19 and 20, it showed that it knew what "affiliated" means.[5]  Marvin insists that "affiliated" is not vague or ambiguous and that in its very own financial statements LightStyles refers to Showplace as an affiliate.  (Doc. 145, ECF p. 9, citing Doc. 140-1, pp. 23-24, LightStyles' admission to RFAs 19 and 20).

Marvin must prevail in regard to RFAs 15 and 16.  These requests refer to the Bates number of the pertinent page of the Business Loan Agreement and ask LightStyles to admit whether the requests accurately restate the obligations of the referenced contractual language regarding eligible accounts receivable.  There is no vagueness or ambiguity in their use of the word "affiliated" since it comes from the Business Loan Agreement.  LightStyles will be required to file amended answers to RFAs 15 and 16.

In regard to RFAs 17 and 18, Marvin is not assisted by the reference to the Bate numbers because there are no Bates numbers referenced in these RFAs.  The definitions section of the Requests For Admission is also of no assistance because "affiliated" is not defined there.  We are, however, persuaded by LightStyles characterization in its financial documents of Showplace as its affiliate.  Given this fact, LightStyles will be required to file amended answers to RFAs 17 and 18.

---

[5]  Request no. 20 was: "Admit that Showplace is the "affiliate" referenced in Note 3 of Your December 31, 2007 and 2006 Financial Statements. (See LS2272257)"

5. *Request No. 23*

Request no. 23 is as follows:

> ADMISSION NO. 23: Admit that the October 29, 2006 Loan Commitment Letter does not allow LightStyles to borrow money from the Bank against accounts receivable amounts which are more than 90 days past invoice date.  (*See* Deposition Exhibit 22 at SUSQ000700)

(Doc. 140-1, ECF p. 6).  LightStyles objected to this request on the grounds that it "is vague and ambiguous and calls for a legal conclusion."  (Doc. 140-1, ECF pp. 25).  LightStyles also denied the request, stating: "Based on LightStyles' understanding of this request, Denied."  (*Id.*).

This request does not call for a legal conclusion.  And as already noted, LightStyles concedes that a denial based on its "understanding" of the requests is meritless.  That leaves only the objection based on vagueness and ambiguity.  LightStyles' argument here is the same one it made in regard to request no. 15, that Marvin has a "drafting problem," (Doc. 144, ECf p. 17), because what it really should have done was submit a request quoting a provision from the Commitment Letter and asking LightStyles to admit that the letter sets forth the provision.  As we noted above in regard to request no. 15, Marvin can submit a request that LightStyles admit that the request accurately restates the obligations of the contractual language set forth in the document.  LightStyles will be required to file an amended answer to request 23.

6. *RFAs 24 Through 27*

RFAs 24 through 27 are as follows:

ADMISSION NO. 24: Admit that the Business Loan Agreement does not allow LightStyles to borrow money from the Bank against accounts receivable accounts which have not been paid in full within 90 days from the invoice date. (*See* Deposition Exhibit 163A at SUSQ000812)

ADMISSION NO. 25: Admit that from January 2007 - July 2011, LightStyles borrowed money from the Bank based on accounts receivable amounts owed by Showplace to LightStyles that were over 14 months from invoice date.

ADMISSION NO. 26: Admit that from January 2007 - July 2011, LightStyles borrowed money from the Bank based on accounts receivable amounts owed by WDWPRON Window & Door Pros to LightStyles that were over 14 months from invoice date.

ADMISSION NO. 27: Admit that from January 2009 - July 2011, LightStyles borrowed money from the Bank based on accounts receivable amounts owed by WDWPROV Window & Door Pros to LightStyles that were over 14 months from invoice date.

(Doc. 140-1, ECF p. 6).  LightStyles objected to each of these requests on the grounds that they were "vague and ambiguous, speculative, and call[ed] for a legal conclusion." (Doc. 144-1, ECF pp. 26-27).  LightStyles also denied each request on the basis that it "lacks sufficient information to admit or deny this request."  (*Id.*).

In contesting their disagreement over these RFAs, the parties make the same arguments discussed above, including LightStyles' argument about Marvin's "drafting problem."  We decide that these RFAs do not call for a legal conclusion nor are they vague or ambiguous.  As we noted above, we also decide that LightStyles "cannot admit or deny" responses are inadequate.  LightStyles must assert in its responses that it

has "made reasonable inquiry" if it is going to say that it can neither admit nor deny.

Moreover, it must also explain in some detail in its responses why the request cannot be

affirmed or denied.  LightStyles will be required to file amended answers to RFAs 24

through 27.[6]

> 7.  *RFAs 29 and 30*

> RFAs 29 and 30 are as follows:

> ADMISSION NO. 29: Admit that each and every month from
> January 2007 - July 2011, Robert Slagle represented to the
> Bank that the accounts receivable amounts owed by
> Showplace to LightStyles listed under the "current" category
> on the attached Accounts Receivable Aging Report were not
> more than 90 days from the invoice date.

> ADMISSION NO. 30: Admit that each and every month from
> January 2007 - July 2011, the Accounts Receivable Aging
> Report that You submitted to the Bank included Showplace
> receivable amounts that were up to 14 months from the
> invoice date in the "current" category.

(Doc. 140-1, ECF pp. 6-7).  LightStyles objected to both of these requests on the grounds

that they were "vague and ambiguous, speculative, and call[ed] for a legal conclusion."

(Doc. 144-1, ECF p. 28).  LightStyles also made a simple denial of request no. 29, (*id.*),

and responded to request no. 30 that it "lacks sufficient information to admit or deny this

request."  (*Id.*).

---

[6] LightStyles also objected that the RFAs were "speculative" but does not pursue that objection here.  In any event, such an objection has no merit.

In contesting whether these RFAs are vague or ambiguous, the parties make the same arguments discussed above, including LightStyles' argument about Marvin's "drafting problem."  We decide that these RFAs do not call for a legal conclusion nor are they vague or ambiguous.  Based on our discussion above, we also decide that LightStyles "cannot admit or deny" response to request no. 30 is inadequate.  LightStyles must assert in its responses that it has "made reasonable inquiry" if it is going to say that it can neither admit nor deny.  Moreover, it must also explain in some detail in its responses why the request cannot be affirmed or denied.  Further, while a one-word denial is generally sufficient, a denial must fairly respond to the substance of a request.  Here, at the end of discovery, a simple denial of request no. 29 is not sufficient.  If LightStyles again denies that request, it shall explain the denial.  LightStyles will be required to file amended answers to RFAs 29 and 30.

C.  *The RFAs Directed to Slagle*

Marvin served Slagle with twenty-seven RFAs.  Marvin challenges the responses to the following RFAs.

1.  *RFAs 5, and 12-13*

RFAs 5 and 12-13 are as follows:

ADMISSION NO. 5: Admit that LightStyles did not write off any portion of the LightStyles account receivable from Showplace at any time during 2009.

> ADMISSION NO.12: Admit that on or about May 19, 2011, You agreed to provide Marvin with a copy of a cash flow forecast for LightStyles.
>
> ADMISSION NO.13: Admit that on or about May 19, 2011, You agreed to provide Marvin with copies of any loan agreements LightStyles had with any banks.

(Doc. 140-1, ECF pp. 10, 11).  Slagle responded to each of these requests that he "lack[ed] sufficient information to admit or deny" it.  (Doc. 140-1. ECF pp. 35, 38-39).

The parties' arguments concerning whether this response is adequate has already been reviewed above.  Slagle must assert in his responses that he has "made reasonable inquiry" if he is going to say that he can neither admit nor deny.  Moreover, he must also explain in some detail in its responses why the request cannot be affirmed or denied.  Slagle will be required to file amended answers to RFAs 5, and 12 and 13.

2.  *RFAs 6 Through 11 and 21 Through 27*

RFAs 6 through 11 deal with whether Slagle agreed at a May 19, 2011, meeting to provide Marvin with certain financial or business documents, with each document the subject of a separate request.  RFAs 6 through 11 are as follows:

> ADMISSION NO. 6: Admit that on or about May 19, 2011, You agreed to provide Marvin with copies of LightStyles' current accounts receivable aging reports.
>
> ADMISSION NO. 7: Admit that on or about May 19, 2011, You agreed to provide Marvin with copies of LightStyles' year end 2009 and 2010 financial statements.
>
> ADMISSION NO. 8: Admit that on or about May 19, 2011, You agreed to provide Marvin with a copy of a detailed repayment plan for LightStyles' past due accounts receivable.

ADMISSION NO. 9: Admit that on or about May 19, 2011, You agreed to provide Marvin with copies of all of LightStyles' notes receivable.

ADMISSION NO. l0: Admit that on or about May 19, 201l, You agreed to provide Marvin with copies of any agreements LightStyles had entered into with any entity or person that related to debts they owed LightStyles.

ADMISSION NO. ll: Admit that on or about May 19, 2011, You agreed to provide Marvin with a copy of any payment plan LightStyles had entered into with any entity or person that related to debts they owed LightStyles.

(Doc. 140-1, ECF p. 11).

In part, Slagle objected to each of these requests by asserting that the document mentioned in each request was vaguely and ambiguously worded: "the current accounts receivable aging reports," "year end 2009 and 2010 financial statements," "detailed repayment plan for LightStyles' past due accounts receivable," all of LightStyles' notes receivable," "any agreements LightStyles had entered into with any entity or person that related to debts they owed LightStyles," and "any payment plan LightStyles had entered into with any entity or person that related to debts they owed LightStyles."  (Doc. 140-1, ECF pp. 36-38).

Slagle also offered a qualified admission to each of these requests.  For request no. 6: "Slagle admits that LightStyles did inform Marvin that it would provide an accounts receivable aging report."  For request no. 7: "Slagle admits that LightStyles did inform Marvin that it would provide financial statements."  For request no. 8: "Slagle admits that LightStyles did inform Marvin that it would provide information concerning

certain of its past due accounts receivable."  For request no. 9: "Slagle admits that LightStyles did agree to provide some notes receivable from certain accounts."  For request no. 10: "Slagle admits that LightStyles did agree to provide agreements with certain accounts.  For request no. 11: "Slagle admits that LightStyles did inform Marvin that it would provide information concerning certain of its debtors."  (Doc. 140-1, ECF pp. 35-38).

RFAs 21 through 27 deal with whether Slagle provided Marvin with the documents mentioned in RFAs 6 through 11 before Marvin terminated its business relationship with LightStyles.[7]  RFAs 21 through 27 are as follows:

> ADMISSION NO. 21: Admit that You did not provide Marvin with copies of any of LightStyles' 2011 accounts receivable aging reports before Marvin terminated its business relationship with LightStyles.

> ADMISSION NO. 22: Admit that You did not provide Marvin with copies of LightStyles' year end 2009 and 2010 financial statements before Marvin terminated its business relationship with LightStyles.

> ADMISSION NO. 23: Admit that You did not provide Marvin with a copy of a detailed repayment schedule with specific dates or time frames for any past due accounts receivable LightStyles had as of 2011 before Marvin terminated its business relationship with LightStyles.

> ADMISSION NO. 24: Admit that You did not provide Marvin with copies of all of LightStyles' notes receivable it had as of 2011, including the underlying supporting documentation,

---

[7] RFAs 12 and 13 also deal with documents supposedly promised at the May 19 meeting, but we have already addressed LightStyles' response to those requests.

before Marvin terminated its business relationship with
LightStyles.

ADMISSION NO. 25: Admit that You did not provide Marvin
with copies of any agreements or contracts LightStyles was a
party to as of 2011 and which related to any debts owed by
LightStyles before Marvin terminated its business relationship
with LightStyles.

ADMISSION NO. 26: Admit that You did not provide Marvin
with a copy of any payment plan LightStyles had agreed to
with any entity or person that related to debts they owed
LightStyles as of 2011 and which contained specific
repayment dates or time frames before Marvin terminated its
business relationship with LightStyles.

ADMISSION NO. 27: Admit that You did not provide Marvin
with a copy of LightStyles' cash flow forecast in 2011 before
Marvin terminated its business relationship with LightStyles.

(Doc. 140-1, ECF pp. 12-13).  In part, Slagle objected to each of these requests by

asserting, as he did with RFAs 6 through 11, that the financial or business document

mentioned in each request was vaguely and ambiguously worded.  (*Id.*, ECF pp. 41-44).

None of these requests is vague or ambiguous.  As Marvin points out in its

reply brief, these documents were the subject of discussion while the parties were still in

a business relationship.  (Doc. 146-1, ECF pp. 12, 39, and 50).  Slagle should have

sufficient comprehension of what these documents mean in the context of this case to

answer these requests.  We will therefore require amended answers to RFAs 6 through

11 and 21 through 27.[8]

_____

[8]  Slagle has made other objections to these requests, that some were overly broad or
compound.  He has also simply denied some of them or stated he could neither admit nor
deny a few.  We will still require amended answers.

-23-

III.   *Marvin's Request For Attorney's Fees and Costs Under*
      *Fed. R. Civ. P. 37(a)(5)*

        Rule 36(a)(6) authorizes the party moving to compel sufficient answers to RFAs to recover its expenses in filing the motion under Fed. R. Civ. P. 37(a)(5).  Since Marvin was successful on its motion, we will allow LightStyles and Slagle an opportunity to show why Marvin should not recover its attorney's fees and costs in filing the motion to compel.  See Rule 37(a)(5)(A).  Marvin will first be required to submit an itemization of the amount of its fees and costs.

        We will issue an appropriate order.

                       /s/William W. Caldwell
                       William W. Caldwell
                       United States District Judge

Date: December 9, 2014