# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIGHTSTYLES, LTD., a Pennsylvania Limited Liability Company, by and through its bankruptcy Trustee, LEON P. HALLER,<br><br>Plaintiff,<br><br>vs.<br><br>MARVIN LUMBER AND CEDAR COMPANY, D/B/A MARVIN WINDOWS AND DOORS, a Minnesota corporation,<br><br>Defendant. | CASE NO. 1:13-CV-01510-WWC |

**LIGHTSTYLES, LTD.'S AND ROBERT SLAGLE'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF MATERIAL FACTS .........................................................1

   A. Pertinent Allegations Of Marvin's Fraud In The Inducement Claim In Its Amended Counterclaim And Third-Party Complaint . . . . . . . . . . . . . . . . . . . . . 1

   B. LightStyles' November 2008 Financials Were Not False . . . . . . . . . . . . . . 4

   C. Marvin Could Not Reasonably Or Justifiably Rely On The November Financials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. LEGAL ARGUMENT ............................................................................................9

   A. Marvin Was Required To Plead Its Fraud In The Inducement Claim Against LightStyles And Mr. Slagle With Particularity . . . . . . . . . . . . . . . . . . . . . . . . 9

   B. Marvin Cannot Satisfy The Required Elements To Prove Fraud In The Inducement By Clear And Convincing Evidence . . . . . . . . . . . . . . . . . . . . . 11

IV.  CONCLUSION ....................................................................................................13

# **TABLE OF AUTHORITIES**

## **Cases**

*American Dental Ass'n v. Cigna Corp.* (11th Cir. 2010)
  605 F. 3d 1283 ..........................................................................................10

*Christidis v. First Pennsylvania Mortg. Trust* (3rd Cir 1983)
  717 F. 2d 96 ..............................................................................................10

*Dean v. Handy & Harman* (M.D. Pa. 1997)
  961 F. Supp. 798 ......................................................................................10

*Eigen v. Textron Lycoming Reciprocating Engine Division* (2005)
  874 A. 2d 1179 .........................................................................................11

*Gerfin v. Colonial Smelting & Refining Co., Inc.* (1953)
  374 Pa. 66, 97 A. 2d 71 ............................................................................11

*Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.* (3rd Cir. 2011)
  653 F. 3d 225 ...........................................................................................10

*Mellon v. Barre-National Drug Co.* (1993)
  431 Pa. Sup. 175, 636 A. 2d 187 ..............................................................11

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.* (3rd Cir. 1984)
  742 F. 2d 786 ...........................................................................................10

## **Rules**

Federal Rules of Civil Procedure 9(b) ................................................................4, 9

**I.      INTRODUCTION**

On December 26, 2013, Marvin Lumber and Cedar Company d/b/a Marvin Windows and Doors ("Marvin") filed an Amended Counterclaim against LightStyles, Ltd. ("LightStyles") in which it asserted for the first time a claim for fraud in the inducement.  On February 4, 2014, Marvin filed a Third-Party Complaint against Robert Slagle in which Marvin asserted a virtually identical fraud in the inducement claim.  Discovery now is closed.  Marvin's testimony in this case establishes as a matter of law that it cannot satisfy its burden for fraud in the inducement to prove by clear and convincing evidence that  (a) the financial statements on which its alleged fraud claims are based were false, (b) that Marvin reasonably and justifiably relied on the financial statements in acting, or failing to act as Marvin alleges, or (c) by providing the financial statements at Marvin's request that LightStyles or Mr. Slagle intended to influence any transaction that Marvin had disclosed to LightStyles or Mr. Slagle.  Therefore, Marvin's fraud claims against LightStyles and Mr. Slagle should be dismissed.

**II.     STATEMENT OF MATERIAL FACTS**

    **A.     Pertinent Allegations Of Marvin's Fraud In The Inducement Claim In Its Amended Counterclaim And Third-Party Complaint**

Marvin alleges in its Amended Counterclaim and Third-Party Complaint that LightStyles and Mr. Slagle fraudulently induced Marvin to continue doing business

with LightStyles by providing at Marvin's request an internal Income Statement and Balance Sheet, dated November 30, 2008.

In its pleadings Marvin alleges fraud in the inducement as follows[1]:

> On January 29, 2009, in an effort to reassure Marvin of the strength of its financial condition, Slagle directed LightStyles' chief financial officer to send Marvin a carefully selected subset of LightStyles' financial records for the period ending November 30, 2008 (the "November Financials"). [Amended Counterclaim ¶ 16, Doc. No. 33; *see* Third-Party Complaint ¶ 15, Doc. No. 49. LightStyles, Ltd.'s and Robert Slagle's Separate Statement of Material Facts In Support of Motion for Summary Judgment ("Separate Statement") at ¶¶ 1, 2.]
>
> In the November Financials, Slagle and LightStyles represented to Marvin that LightStyles had current account receivable assets of $20,783,813.61 and was reserving only $495,142.66 as an allowance for bad debt. Thus, by sending Marvin the November Financials, Slagle effectively represented to Marvin that as of November 30, 2008, LightStyles had $20,298,670.95 in current, collectable accounts receivable. (Amended Counterclaim ¶ 17, Doc. No. 33; s*ee* Third-Party Complaint ¶ 16, Doc. No. 49. Separate Statement at ¶¶ 3, 4.)
>
> Marvin relied on Slagle's representations regarding LightStyles' financial condition and the status of its accounts receivable in continuing to sell product to LightStyles from and after January 29, 2009 and not terminating its business relationship with LightStyles immediately. (Amended Counterclaim ¶ 18, Doc. No.

---

[1] While the fraud allegations in Marvin's Amended Counterclaim and Third-Party Complaint are not identical word-for-word, there is no material difference in the allegations.

33; s*ee* Third-Party Complaint ¶ 17, Doc. No. 49. Separate Statement at ¶ 5.)

LightStyles actually had far less in current accounts receivable as of November 30, 2008 than Slagle had represented. (Amended Counterclaim ¶ 19, Doc. No. 33; s*ee* Third-Party Complaint ¶ 18, Doc. No. 49. Separate Statement at ¶ 6.)

* * *

### **FIRST CLAIM FOR RELIEF**
(Fraud in the Inducement)

On or about January 29, 2009, Slagle and LightStyles represented to Marvin that LightStyles had more than $20 million in current, collectable accounts receivable as of November 30, 2008. (Amended Counterclaim ¶ 70, Doc. No. 33; *see* Third-Party Complaint ¶ 63, Doc. No. 49. Separate Statement at ¶¶ 7, 8.)

This representation was false because, in reality, LightStyles' actual current accounts receivable was nearly half that amount, just over $13 million. (Amended Counterclaim ¶ 71, Doc. No. 33; *see* Third-Party Complaint ¶ 64, Doc. No. 49. Separate Statement at ¶ 9.)

This representation was material to Marvin's decision to continue selling Marvin brand products to LightStyles from and after January 29, 2009. (Amended Counterclaim ¶ 72, Doc. No. 33; *see* Third-Party Complaint ¶ 65, Doc. No. 49. Separate Statement at ¶ 10.)

Marvin justifiably relied on the representation made by Slagle and LightStyles, as demonstrated, by among other things, its decision to continue selling its products to LightStyles rather than immediately terminating the relationship. (Amended Counterclaim ¶ 75, Doc. No. 33;

3

>*see* Third-Party Complaint ¶ 68, Doc. No. 49.  Separate Statement at ¶¶ 11, 12.)

Marvin knew when it filed its Amended Counterclaim and Third-Party Complaint that its fraud claim must be pled with particularity so that LightStyles and Mr. Slagle could address the allegations.  Fed. R. Civ. P. 9(b).  Marvin's fraud in the inducement claim is a narrowly drawn claim with an extremely limited time frame and limited set of financial information that Marvin alleges forms the basis of its fraud claim.

As alleged, Marvin's fraud in the inducement claim relates solely to a purported misrepresentation regarding information contained in LightStyles' internal November 30, 2008, income statement and balance sheet, referred to by Marvin in its pleadings as the "November Financials," on which Marvin claims to have relied in continuing in business with LightStyles.  As a matter of law based on the undisputed material facts, the November Financials cannot form the basis for Marvin's fraud in the inducement claim.

**B.   LightStyles' November 2008 Financials Were Not False**

The "November Financials" on which Marvin bases its fraud claim consist of LightStyles' income statement and balance sheet as of November 30, 2008.  (Separate Statement ¶ 13.)  The November Financials were internal LightStyles' financial statements.  LightStyles' year-end financials had not been finalized yet by LightStyles, or reviewed by its outside accountants, as of the date the November

4

Financials were provided to Marvin at Marvin's request.  As Marvin knew, the November Financials were not reviewed by LightStyles' C.P.A. firm, which as Marvin also knew annually issued reviewed financial statements typically during the first quarter of the following year.   (Separate Statement ¶ 15, 16.)

Marvin alleges that the November Financials were false.  Marvin claims that by including all LightStyles' accounts receivable in the amount of $20,783,813.61 and reserving $495,142.66 as "bad debt" LightStyles falsely was representing to Marvin that the remainder of LightStyles' accounts receivable was "current, collectable accounts receivable."  According to Marvin's allegations:  "Slagle effectively represented to Marvin that as of November 30, 2008, LightStyles had $20,298,670.95 in current, collectable accounts receivable." (Amended Counterclaim ¶17, Doc. No. 33; *see* Third-Party Complaint ¶16, Doc. No. 49.  Separate Statement ¶¶ 3, 4.)

The November Financials, however, do not make any representation as to the age of the accounts receivable or whether they are collectable.  All outstanding accounts receivable are included. (Separate Statement ¶¶ 14-18, 20, 21.)  Further, by listing approximately $495K as "bad debt" LightStyles was not making any representation as to the age or collectability of the remainder of its accounts receivable.  The bad debt amount merely represents that LightStyles had made a determination that the amount should be written off as bad debt.  It does not mean

5

the opposite; i.e., a guarantee that the remainder of the accounts receivable is "current" and "collectable" as Marvin alleges. (Separate Statement ¶ 22.) As a matter of law, the November Financials cannot be deemed to be a false representation of the age or collectability of LightStyles' accounts receivable.

### C. Marvin Could Not Reasonably Or Justifiably Rely On The November Financials

A sophisticated business such as Marvin cannot legitimately argue that interim internal financial statements, which have not been reviewed by an outside accounting firm, represent the age and collectability of a company's receivables. Marvin's Chief Financial Officer at the time, Elliot Larson, was a highly experienced Certified Public Accountant, knowledgeable about cost accounting and financial statements.[2] Mr. Larson testified that Marvin asked LightStyles to provide the November Financials in connection with the bankruptcy filing of a LightStyles' dealer, Smitty's Building Supplies ("Smitty's"). (Separate Statement ¶ 13.) Mr. Larson admitted that when he received and reviewed the November Financials he knew that they were **not** year-end financials, which did not surprise him. He further testified that he recognized LightStyles had "significant large

---

[2] Mr. Larson is a C.P.A., licensed by the state of Minnesota in 1975, who received his accounting degree from Mankato State University in Minnesota. Prior to joining Marvin, Mr. Larson worked as a senior staff accountant in the audit department at Peat Marwick & Mitchell, auditing private and public companies. He then was an assistant controller for AMF Crestliner, which was in the business of manufacturing watercraft, where he was responsible for cost accounting, general ledger work, and day-to-day accounting. (Separate Statement ¶ 18.)

accounts receivable and encouraged [LightStyles] to start collecting on them. . . ,"  meaning Mr. Larson knew they were not "current."  (Separate Statement ¶ 15.)  After reviewing the November Financials, Mr. Larson had a telephone conversation with Mr. Slagle of LightStyles.  Mr. Larson did not ask Mr. Slagle anything about the age of LightStyles' accounts receivable, or about LightStyles' bad debt.  Mr. Larson testified that he knew the bad debt line of the November Financials did not include the $3.2M account receivable from Smitty's, which had just filed bankruptcy.

> Q.  Now, there is also an "Allowance For Bad Debt" line right beneath the "Accounts Receivable" line?
>
> A.  Yes.
>
> Q.  And do you recall looking at the bad debt, which indicates $495,142 and change?  Is that something you recall looking at when you reviewed these financial statements?
>
> A.  Yeah.
>
> Q.  Did you have a discussion with Mr. Slagle about the bad debt?
>
> A.  No.
>
> Q.  Knowing that these financial statements were for the period ending 11-30-08, I take it you understood that that bad debt number did not include the Smitty's bankruptcy debt owed to LightStyles, correct?
>
> MR. WINDLER:  Objection to the form.

> THE WITNESS: That's obvious that it doesn't include it.
>
> BY MR. ROVENS: Okay. So you knew when you –
>
> A. Yes.
>
> Q. – reviewed these financial statements? And do you recall talking to anyone else at Marvin about the bad debt line that is contained in the November 30, '08 financial statements, Exhibit 364?
>
> MR. WINDLER: Object to the form.
>
> THE WITNESS: No, I don't recall.

(Separate Statement ¶¶ 19, 20.) To put it another way, Mr. Larson knew the accounts receivable line on the November Financials included the $3.2M Smitty's outstanding account receivable. Therefore, Marvin's critical fraud allegation that the November Financials represented to Marvin that LightStyles had "current and collectable accounts receivable" of "$20,298,670.95, is wholly undermined by Marvin's own CFO who testified to the contrary.

As a sophisticated business, Marvin knew, and has testified that it knew, all receivables would be contained in the monthly financial printout irrespective of their age; i.e., not just those that were "current." Marvin also testified that the November Financials did not represent the age of the accounts receivable, or whether they were current. (Separate Statement ¶ 17.)

In addition, Mr. Larson testified that when he later reviewed LightStyles' December 31, 2010, financials he understood that there were a lot of old receivables that needed to be collected by LightStyles. (Separate Statement ¶ 23.) As established by the undisputed facts, Marvin's fraud claim that it interpreted and reasonably relied on the November Financials as a representation that the receivable amount consisted of only "current, collectable accounts receivable" is demonstrably untrue. Marvin did not reasonably and justifiably rely on the November Financials as it has alleged.

## III.  LEGAL ARGUMENT

### A.  Marvin Was Required To Plead Its Fraud In The Inducement Claim Against LightStyles And Mr. Slagle With Particularity

In compliance with the Federal Rules of Civil Procedure Marvin alleged its fraud claim with particularly. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud. . ." Fed. R. Civ. P. 9(b). Marvin was required to plead (1) the statements alleged to be fraudulent (here the November Financials), (2) the identity of the person who made the statements (here LightStyles and Mr. Slagle), (3) when and where the statements were made (here in January 2009, when LightStyles provided the November Financials to Marvin), and (4) explain why the statements were fraudulent (here because purportedly the November Financials represented that the accounts receivable entry was a representation of the total amount of "current" and "collectable"

9

accounts receivable). *See, e.g., Christidis v. First Pennsylvania Mortg. Trust* (3rd Cir 1983) 717 F. 2d 96, 99-100; *Dean v. Handy & Harman* (M.D. Pa. 1997) 961 F. Supp. 798, 807; *American Dental Ass'n v. Cigna Corp.* (11th Cir. 2010) 605 F. 3d 1283, 1291.

The purpose of having to plead fraud with specificity is "in order to place the defendants on notice ***of the precise misconduct with which they are charged***, . . ." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.* (3rd Cir. 1984) 742 F. 2d 786, 791 (emphasis added). "The rule's purpose is to require plaintiffs to provide sufficient information so that defendants can respond to the claims against them." *Branche v. Wells Fargo Mortg. Co.* (M.D. Pa. 2012), at p. 2 (citing *Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.* (3rd Cir. 2011) 653 F. 3d 225, 233. LightStyles and Mr. Slagle have the right to rely on the fraud claim as alleged in Marvin's pleadings. They need not anticipate or defend against some unpled factual allegations, which are materially different from the fraud claim as pled. While Marvin could have sought leave to amend its fraud in the inducement claim to allege additional or different facts, it elected not to do so.[3]

---

[3] In fact, on August 5, 2014, Marvin's counsel notified LightStyles' counsel that Marvin intended to amend its Amended Counterclaim and Third-Party Complaint to allege a RICO violation, but never followed through on his threat. (Declaration of Douglas J. Rovens at ¶ 8, filed concurrently herewith.)

### B. Marvin Cannot Satisfy The Required Elements To Prove Fraud In The Inducement By Clear And Convincing Evidence

The elements of fraud in the inducement under Pennsylvania law are: "'(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Eigen v. Textron Lycoming Reciprocating Engine Division* (2005) 874 A. 2d 1179, 1185. The Pennsylvania Supreme Court has long held that fraud must be established by clear and convincing evidence. *Gerfin v. Colonial Smelting & Refining Co., Inc.* (1953) 374 Pa. 66, 67-68, 97 A. 2d 71, 72 ("'It is well settled that fraud must be proved by clear and convincing evidence.'" (Citations omitted).) Clear and convincing evidence means evidence that is "clear, precise and indubitable; otherwise it should be withdrawn from the jury." *Id.* 374 Pa. at 67-68, 97 A. 2d at 72; a*ccord, Mellon v. Barre-National Drug Co.* (1993) 431 Pa. Sup. 175, 179-80, 636 A. 2d 187, 189 ("With respect to Count 7, fraud, we likewise determine that summary judgment must be granted in favor of the defendants. It has uniformly been held that a very high standard of proof is required to establish a fraud. The evidence in support of it must be clear, precise and indubitable." (Citations omitted).) Here, Marvin's "evidence" of fraud falls far short of the very high bar of clear and convincing proof.

First, Marvin's contention that the November Financials were a representation that the dollar amount of LightStyles' receivables were "current" and "collectable" on which it justifiably relied is not viable. Marvin has admitted it knew that all outstanding receivables were reported on LightStyles' financial statements. (Separate Statement ¶ 17.) Marvin also testified that it knew that the Smitty's receivable was included in the total accounts receivable amount on LightStyles' balance sheet even though Smitty's had filed for bankruptcy prior to Marvin receiving the November Financials and LightStyles told Marvin that it hoped to get 30 cents on the dollar from the bankruptcy. (Separate Statement ¶ 20.) Therefore, Marvin knew at a minimum that at least seventy percent (70%) ($2.24 million) of the Smitty's $3.2 million receivable was not "collectable."

Also, because as Marvin testified the November Financials were internal and interim, not year-end reviewed financials by LightStyles' accounts, Marvin could not justifiably rely on the accuracy of the financials with respect to bad debt, or for that matter, with respect to the dollar amount of LightStyles' receivables. The November Financials were not intended for use outside of LightStyles. (Separate Statement ¶¶ 15, 16, 22.)

Marvin requested financials knowing they were internal and interim, without any necessary year-end adjustments. For a sophisticated business like Marvin to now claim that (a) the November Financials were false, and (b) Marvin relied on

the November Financials as being a representation of "current, collectable accounts receivable," fails as a matter of law.  Therefore, Marvin cannot establish essential elements of its fraud claim; falsity and justifiable reliance.

Second, the November Financials were not material to any "transaction at hand."  Marvin did not notify LightStyles that it intended to rely on the November Financials to decide whether Marvin would continue doing business with LightStyles.  Marvin did not tell LightStyles that it wanted the November Financials for any express purpose and certainly did not disclose that it wanted the November Financials to determine whether its accounts receivable were "current" and "collectable."  (Separate Statement ¶ 13.)  Therefore, the November Financials were not provided or intended by LightStyles or Mr. Slagle to influence any transaction with Marvin, which is an essential element of Marvin's fraud in the inducement claim.  (Separate Statement ¶¶ 13, 16, 17, 19, 22.)

## IV.   CONCLUSION

Marvin's fraud in the inducement claim is without merit.  There are no genuine issues of material fact and summary judgment on Marvin's fraud claims against LightStyles and Mr. Slagle should be granted.

Dated:  December 31, 2014		Respectfully submitted,

John M. Ogden (PA Bar No. 67940)
Email:  ogdenjm@gmail.com
257 E. Market St., York, PA 17403
Telephone:  717.718.0406
Facsimile:  717.846.0687

        -and-

Douglas J. Rovens (CA Bar No. 106582)
Email:  drovens@rovenslamb.com
Rovens Lamb LLP
1500 Rosecrans Avenue, Suite 418
Manhattan Beach, CA 90266
Telephone:  310.536.7830
Facsimile:  310.872.5026


By:  */S/ Douglas J. Rovens*
      Douglas J. Rovens
Special Counsel for Plaintiff and
Counterdefendant LightStyles, Ltd., and for
Third-Party Defendant Robert Slagle