UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIGHTSTYLES, LTD., a Pennsylvania Limited Liability Company, by and through its bankruptcy Trustee, LEON P. HALLER,<br><br>Plaintiff,<br><br>vs.<br><br>MARVIN LUMBER AND CEDAR COMPANY, D/B/A MARVIN WINDOWS AND DOORS, a Minnesota corporation,<br><br>Defendant. | CASE NO. 1:13-cv-01510-WWC |

**LIGHTSTYLES, LTD.'S AND ROBERT SLAGLE'S
STATEMENT OF MATERIAL FACTS IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

- 1 -

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, LightStyles, Ltd. ("LightStyles") and Robert Slagle ("Slagle") hereby submit their Statement of Material Facts in Support of Motion for Summary Judgment

| | MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Paragraph 16 of Marvin's Amended Counterclaim against LightStyles ("Am. Counterclaim") alleges as follows:<br><br>"On January 29, 2009, in an effort to reassure Marvin of the strength of its financial condition, Slagle directed LightStyles' chief financial officer to send Marvin a carefully selected subset of LightStyles' financial records for the period ending November 30, 2008 (the "November Financials")." | Amended Counterclaim, filed December 23, 2013 (Doc. No. 33), at ¶16, a true and correct copy of which is attached to the Declaration of Douglas J. Rovens ("Rovens Decl.") ¶ 2, as Exhibit A for the Court's convenience. |
| 2. | Paragraph 15 of Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"On January 29, 2009, in an effort to reassure Marvin of the strength of its financial condition, Slagle directed his chief financial officer to send Marvin a carefully selected subset of LightStyles' financial records for the period ending November 30, 2008 | Third-Party Complaint, filed February 4, 2014 (Doc. No. 49), at ¶15, a true and correct copy of which is attached to the Rovens Decl. ¶ 3, as Exhibit B for the Court's convenience. |

|    | MATERIAL FACT | SUPPORTING EVIDENCE |
|----|---------------|---------------------|
|    | (the "November Financials")." |  |
| 3. | Paragraph 17 of Marvin's Am. Counterclaim against LightStyles alleges as follows:<br><br>"In the November Financials, Slagle and LightStyles represented to Marvin that LightStyles had current account receivable assets of $20,783,813.61 and was reserving only $495,142.66 as an allowance for bad debt. Thus, by sending Marvin the November Financials, Slagle effectively represented to Marvin that as of November 30, 2008, LightStyles had $20,298,670.95 in current, collectable accounts receivable." | Ex. A to the Rovens Decl. at ¶ 17. |
| 4. | Paragraph 16 of Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"In the November Financials, Slagle represented to Marvin that LightStyles had current account receivable assets of $20,783,813.61 and was reserving only $495,142.66 as an allowance for bad debt. Thus, by sending Marvin the November Financials, Slagle effectively represented to Marvin that as of November 30, 2008, LightStyles had | Ex. B to the Rovens Decl. at ¶ 16. |

| | MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | $20,298,670.95 in current, collectable accounts receivable." | |
| 5. | Paragraph 18 of Marvin's Am. Counterclaim against LightStyles and paragraph 17 of Marvin's Third Party Complaint against Mr. Slagle alleges as follows:<br><br>"Marvin relied on Slagle's representations regarding LightStyles' financial condition and the status of its accounts receivable in continuing to sell product to LightStyles from and after January 29, 2009 and not terminating its business relationship with LightStyles immediately." | Ex. A to the Rovens Decl. at ¶ 18; Ex. B to the Rovens Decl. at ¶ 17. |
| 6. | Paragraph 19 of Marvin's Am. Counterclaim against LightStyles and paragraph 18 of Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"LightStyles actually had far less in current accounts receivable as of November 30, 2008 than Slagle had represented." | Ex. A to the Rovens Decl. at ¶ 19; Ex. B to the Rovens Decl. at ¶ 18. |
| 7. | Paragraph 70 of Marvin's First Claim for Relief (Fraud | Ex. A to the Rovens Decl. at ¶ 70. |

| MATERIAL FACT | | SUPPORTING EVIDENCE |
|---|---|---|
| | in the Inducement) in Marvin's Am. Counterclaim against LightStyles alleges as follows:<br><br>"On or about January 29, 2009, Slagle and LightStyles represented to Marvin that LightStyles had more than $20 million in current, collectable accounts receivable as of November 30, 2008." | |
| 8. | Paragraph 63 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"On or about January 29, 2009, Slagle represented to Marvin that LightStyles had more than $20 million in current, collectable accounts receivable as of November 30, 2008." | Ex. B to the Rovens Decl. at ¶ 63 |
| 9. | Paragraph 71 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Am. Counterclaim and paragraph 64 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"This representation was false | Ex. A to the Rovens Decl. at ¶ 71; Ex. B to the Rovens Decl. at ¶ 64. |

| | MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | because, in reality, LightStyles' actual current accounts receivable was nearly half that amount, just over $13 million." | |
| 10. | Paragraph 72 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Am. Counterclaim and paragraph 65 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"This representation was material to Marvin's decision to continue selling Marvin brand products to LightStyles from and after January 29, 2009." | Ex. A to the Rovens Decl. at ¶ 72; Ex. B to the Rovens Decl. at ¶ 65. |
| 11. | Paragraph 75 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"Marvin justifiably relied on the representation made by Slagle and LightStyles, as demonstrated, by among other things, its decision to continue selling its products to LightStyles rather than immediately terminating the | Ex. A to the Rovens Decl. at ¶ 75. |

| MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| distributorship." | |
| 12. Paragraph 68 of Marvin's First Claim for Relief (Fraud in the Inducement) in Marvin's Third-Party Complaint against Mr. Slagle alleges as follows:<br><br>"Marvin justifiably relied on the representation made by Slagle, as demonstrated, by among other things, its decision to continue selling its products to LightStyles rather than immediately terminating the relationship." | Ex. B to the Rovens Decl. at ¶ 68. |
| 13. The "November Financials" on which Marvin bases its fraud claim were a LightStyles' income statement and balance sheet current as of November 30, 2008. They were requested by Marvin in connection with the bankruptcy filing of a large LightStyles' dealer, Smitty's Building Supplies. Marvin never told LightStyles that it wanted financial statements to determine whether its accounts receivable were | Deposition of Elliot Larson ("Larson Dep.")[1] at pp. 73:4-77:25, and Deposition No. 364 thereto; Declaration of Robert Slagle ("Slagle Decl.") ¶¶ 2, 3, 5, filed concurrently herewith.) |

---

[1] A true and correct copy of excerpts of the Deposition of Elliot Larson are attached as Exhibit C to the Declaration of Douglas J. Rovens filed concurrently herewith.

| | MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | current or collectable, or to decide whether Marvin still wanted to be in business with LightStyles. | |
| 14. | Marvin knew that the accounts receivable amount contained in LightStyles' November Financials were not all current or all collectable. | Larson Dep. at pp. 79:7-78:9. |
| 15. | Marvin knew that the November Financials were not year-end financials, which did not surprise Marvin, and that LightStyles had "significant large accounts receivable, which Marvin encouraged LightStyles to start collecting." | Larson Dep. at pp. 76:1-77:19. |
| 16. | LightStyles year-end financials had not been finalized yet by LightStyles as of the date the November Financials were provided to Marvin at Marvin's request. They were internal, interim financial statements, which provided only for a bad debt allowance based on a percentage of LightStyles' receivables that historically would be uncollectable. | Larson Dep. at pp. 77:9-25; Deposition of Philip Stoltzfus ("Stoltzfus Dep.")[2] at pp. 83:24-86:12; Slagle Decl. ¶ 2. |

---

[2] A true and correct copy of excerpts of the Deposition of Philip Stoltzfus are attached as Exhibit D to the Declaration of Douglas J. Rovens.

| MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 17. The November Financials do not make any representation as to the age of LightStyles' accounts receivable or whether they are collectable. As Marvin knew, all outstanding accounts receivable were included in the November Financials. | Marvin's Fed. R. Civ. P. 30(b)(6) designee, Gary Daniels[3] at pp. 291:2-293:11. |
| 18. Marvin is a sophisticated business that had a full time, experienced Chief Financial Officer who was a certified public accountant. | Larson Dep. at pp. 11:24-16:17. |
| 19. After receiving the November Financials, Marvin did not ask LightStyles anything about the age of LightStyles' accounts receivable or about LightStyles' bad debt. | Larson Dep. at p. 78:1-12, 79:7-17; Slagle Decl. ¶ 3. |
| 20. Marvin knew the bad debt line of the November Financials did not include the $3.2M account receivable from a large LightStyles' dealer, Smitty's Building Supplies, which had just filed bankruptcy. | Larson Dep. at pp. 79:7-80:9. |
| 21. Marvin was told by | Larson Dep. at pp. 73:13-75:25. |

---

[3] A true and correct copy of excerpts of the Deposition of Marvin's Fed. R. Civ. P. 30(b)(6) designee, Gary Daniels, are attached as Exhibit E to the Declaration of Douglas J. Rovens.

| | MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | LightStyles that it hoped to get 30 cents on the dollar from the bankruptcy. | |
| 22. | The bad debt amount on LightStyles' monthly financials merely is an amount that LightStyles' projects based on past performance will be written off at year end. The bad debt on LightStyles' year-end financials means that LightStyles has made a determination that the amount should be written off as bad debt because it will not be collected. The bad debt allowance on LightStyles' monthly and year-end financials, however, does not mean the opposite; i.e., a guarantee that the remainder of the accounts receivable is "current" and "collectable." | Stoltzfus Dep. at pp. 83:24-86:12; Slagle Decl. ¶ 4. |
| 23. | Marvin later reviewed LightStyles' December 31, 2010, financials and understood that there were a lot of old receivables that needed to be collected by LightStyles. | Larson Dep. at pp. 109:12 – 112:10. |

DATED:  December 31, 2014    John M. Ogden (PA Bar No. 67940)
Email:  ogdenjm@gmail.com
257 E. Market St.
York, PA 17403
Telephone:  717.718.0406
Facsimile:  717.846.0687

-and-

Douglas J. Rovens (CA Bar No. 106582)
Email:  drovens@rovenslamb.com
Steven A. Lamb (CA Bar No. 132534)
Email:  slamb@rovenslamb.com
Rovens Lamb LLP
1500 Rosecrans Avenue, Suite 418
Manhattan Beach, CA 90266
Telephone:  310.536.7830
Facsimile:  310.872.5026


By:  */S/ Douglas J. Rovens*
　　　Douglas J. Rovens
Special Counsel for Plaintiff and Counterdefendant LightStyles, Ltd. through its Trustee, Leon P. Haller, and for Third-Party Defendant, Robert Slagle