| | |
|---|---|
| LIGHTSTYLES, LTD., a Pennsylvania Limited Liability Company, by and through its bankruptcy Trustee, LEON P.  HALLER, | CASE NO. 1:13-cv-01510-WWC |
| Plaintiff, | |
| vs. | |
| MARVIN LUMBER AND CEDAR COMPANY, D/B/A MARVIN WINDOWS AND DOORS, a Minnesota corporation, | |
| Defendant. | |

**LIGHTSTYLES, LTD.'S EXCERPTS TO DEPOSITION OF SUSAN MARVIN CITED IN OPPOSITION TO <u>MARVIN'S MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to the Court's Order entered May 21, 2015 (Doc. No. 181) Plaintiff LightStyles, Ltd. hereby submits as Exhibit A the missing excerpts from the deposition of Susan Marvin that were cited in its Opposition to Marvin Lumber and Cedar Company's Motion for Summary Judgment.

DATED:  May 28, 2015

John M. Ogden (PA Bar No. 67940)
Email:  ogdenjm@gmail.com
257 E. Market St.
York, PA 17403
Telephone:  717.718.0406
Facsimile:  717.846.0687

-and-

Douglas J. Rovens (CA Bar No. 106582)
Email:  drovens@rovenslamb.com
Steven A. Lamb (CA Bar No. 132534)
Email:  slamb@rovenslamb.com
Rovens Lamb LLP
1500 Rosecrans Avenue, Suite 418
Manhattan Beach, CA 90266
Telephone:  310.536.7830
Facsimile:  310.872.5026

By:   _/S/ Douglas J. Rovens_
        Douglas J. Rovens
Special Counsel for Plaintiff and
Counterdefendant LightStyles, Ltd. through
its Trustee, Leon P. Haller, and for Third
Party Defendant, Robert Slagle

**EXHIBIT A**

1                    UNITED STATES DISTRICT COURT

2           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3    --------------------------------------------------------

4    LightStyles, Ltd., a Pennsylvania
     limited liability company, by and
5    through its bankruptcy Trustee,
     Leon P. Haller,
6
                    Plaintiff,          No: 1:13-CV-01410-WWC
7

8    vs.

9    Marvin Lumber and Cedar Company,
     d/b/a Marvin Windows and Doors, a
10   Minnesota corporation,

11                  Defendant.

12   --------------------------------------------------------

13

14                  VIDEOTAPED DEPOSITION OF

15                      SUSAN I. MARVIN

16                  MINNEAPOLIS, MINNESOTA

17                    AUGUST 29, 2014

18

19

20   ATKINSON BAKER, INC.
     COURT REPORTERS
21   (800) 288-3376
     www.depo.com
22
     REPORTED BY:  LISA M. THORSGAARD, RPR
23
     FILE NO:  A8077E9
24

25

```
 1   BY MR. ROVENS:                                   12:55:26

 2   Q   Well, is there a process whereby on some type  12:55:26

 3       of periodic basis Marvin gathers information   12:55:30

 4       about distributors and receives input from     12:55:32

 5       various divisions within the company and       12:55:36

 6       evaluates how well a distributor is doing      12:55:39

 7       with respect to its distribution agreement     12:55:42

 8       with Marvin?                                    12:55:46

 9                   MR. WINDLER:   Same objections.     12:55:48

10                   THE WITNESS:   You know, we will    12:55:49

11       periodically sit down with a distributor and   12:55:51

12       discuss what's working well and what's not.    12:55:54

13       And we will get input from our employees and   12:55:56

14       we ask the same of them.   We ask them to let  12:56:00

15       us know what we're doing well and what we need 12:56:02

16       to improve on.                                  12:56:05

17            It's -- it's fairly informal, I think,     12:56:06

18       compared to maybe how some companies might do  12:56:09

19       it, but yes, we have periodic discussions with 12:56:12

20       distribution about the performance and vice    12:56:15

21       versa.   I can assure you.                      12:56:17

22   BY MR. ROVENS:                                     12:56:19

23   Q   And is there -- are there any writings         12:56:19

24       generated in connection with these formal or   12:56:22

25       informal evaluations, whatever word you're     12:56:25
```

| | | |
|---|---|---|
| 1 | comfortable with? | 12:56:27 |
| 2 | MR. WINDLER:  Objection; | 12:56:28 |
| 3 | foundation. | 12:56:28 |
| 4 | THE WITNESS:  What do you mean | 12:56:30 |
| 5 | by writings? | 12:56:30 |
| 6 | BY MR. ROVENS: | 12:56:32 |
| 7 | Q   For example, is a compilation of information | 12:56:33 |
| 8 | assembled and prepared in written form that's | 12:56:37 |
| 9 | shared with the distributor? | 12:56:42 |
| 10 | MR. WINDLER:  Same objection. | 12:56:45 |
| 11 | THE WITNESS:  I don't believe | 12:56:48 |
| 12 | we have a standard presentation that we share | 12:56:49 |
| 13 | with the distributor.  I -- in terms of | 12:56:55 |
| 14 | writing, I believe I've known our salespeople | 12:56:58 |
| 15 | on occasion sit down and have a discussion | 12:57:02 |
| 16 | with a distributor and take notes of the | 12:57:05 |
| 17 | meeting and provide us input as appropriate, | 12:57:08 |
| 18 | but I don't think there's a -- I could be | 12:57:10 |
| 19 | wrong but I don't think there's a formal | 12:57:15 |
| 20 | report prepared. | 12:57:18 |
| 21 | BY MR. ROVENS: | 12:57:20 |
| 22 | Q   As part of the distribution agreement with | 12:57:26 |
| 23 | LightStyles, was LightStyles authorized to | 12:57:29 |
| 24 | use Marvin's trademarks? | 12:57:33 |
| 25 | A   LightStyles was certainly authorized to let | 12:57:41 |

| | | | |
|---|---|---|---|
| 1 | | customers know that they were selling Marvin | 12:57:46 |
| 2 | | products. And would they be able to use our | 12:57:48 |
| 3 | | logo in the sales process? Yes. | 12:57:54 |
| 4 | Q | And that was -- I was asking the latter part | 12:57:58 |
| 5 | | of that. | 12:57:59 |
| 6 | A | Yes. | 12:58:02 |
| 7 | Q | Okay. | 12:58:02 |
| 8 | A | Yes, they could do that. | 12:58:03 |
| 9 | Q | Okay. And was that true with all Marvin | 12:58:04 |
| 10 | | distributors? They were authorized to use | 12:58:07 |
| 11 | | Marvin's trademarks; meaning, its logo and -- | 12:58:08 |
| 12 | | MR. WINDLER: Objection; | 12:58:11 |
| 13 | | foundation. Vague as to time frame. | 12:58:11 |
| 14 | | BY MR. ROVENS: | 12:58:13 |
| 15 | Q | In connection with its distribution of Marvin | 12:58:13 |
| 16 | | products? | 12:58:16 |
| 17 | | MR. WINDLER: Same objections. | 12:58:17 |
| 18 | | THE WITNESS: Yes. A | 12:58:18 |
| 19 | | distributor, if they're a Marvin distributor, | 12:58:19 |
| 20 | | would have the right to use our logo in their | 12:58:21 |
| 21 | | promotional materials, yeah. | 12:58:27 |
| 22 | | BY MR. ROVENS: | 12:58:33 |
| 23 | Q | And do you know whether Marvin's trademarks | 12:58:33 |
| 24 | | and logos, the specific marks and logos that | 12:58:43 |
| 25 | | Marvin used were provided to LightStyles so | 12:58:45 |

| | | |
|---|---|---|
| 1 | that they could adopt the trademarks for use | 12:58:49 |
| 2 | on promotional literature or other writings? | 12:58:52 |
| 3 | MR. WINDLER: Objection; form, | 12:58:56 |
| 4 | vague, foundation. | 12:58:56 |
| 5 | THE WITNESS: I don't have any | 12:59:00 |
| 6 | specific information to that, but I would -- I | 12:59:01 |
| 7 | would guess we would -- as a business | 12:59:05 |
| 8 | practice, we would make logos available, our | 12:59:08 |
| 9 | materials available. | 12:59:13 |
| 10 | BY MR. ROVENS: | 12:59:15 |
| 11 | Q And was there some department within Marvin | 12:59:15 |
| 12 | that provided those materials? Marketing or | 12:59:18 |
| 13 | legal or some other department within Marvin? | 12:59:20 |
| 14 | MR. WINDLER: Same objection. | 12:59:22 |
| 15 | THE WITNESS: Promotional | 12:59:23 |
| 16 | materials would be available to distribution | 12:59:24 |
| 17 | through marketing. | 12:59:26 |
| 18 | BY MR. ROVENS: | 12:59:28 |
| 19 | Q And as far as providing logos or trademarks, | 12:59:29 |
| 20 | were those made available through marketing? | 12:59:34 |
| 21 | A That is where I would call -- | 12:59:37 |
| 22 | MR. WINDLER: Same objection. | 12:59:39 |
| 23 | THE WITNESS: -- to get one, | 12:59:40 |
| 24 | yes. | 12:59:41 |
| 25 | | |

```
1   BY MR. ROVENS:                                    12:59:42

2   Q   Okay.  Were distributors including            12:59:51

3       LightStyles encouraged to use Marvin's logos  12:59:53

4       and trademark on their marketing materials?   12:59:59

5                   MR. WINDLER:  Objection;           13:00:01

6       foundation.  Vague as to distributors.        13:00:01

7       Foundation.                                    13:00:03

8                   THE WITNESS:  I don't recall       13:00:09

9       that we encouraged or not the use of our logo 13:00:09

10      by distributors.  I, by the same token, think, 13:00:18

11      just from a common sense perspective, it would 13:00:23

12      be pretty hard to promote a brand without      13:00:25

13      using its name.                                13:00:29

14  BY MR. ROVENS:                                    13:00:32

15  Q   I'm asking a little more specific question.   13:00:33

16      And I want you to distinguish between just    13:00:35

17      using the name Marvin and using its actual    13:00:39

18      trademarks and logos, which is its branding.  13:00:43

19  A   Right.                                         13:00:46

20  Q   You were in marketing for --                  13:00:46

21  A   Yes.                                           13:00:47

22  Q   -- a period of time?                           13:00:47

23  A   Yes.                                           13:00:48

24  Q   Okay.  So did Marvin view that it was in its  13:00:49

25      interest to have its distributors promote     13:00:53
```

| | | |
|---|---|---|
| 1 | Marvin's name through the use of its logo and | 13:00:58 |
| 2 | trademarks in its marketing materials? | 13:01:00 |
| 3 | MR. WINDLER: Objection; | 13:01:03 |
| 4 | foundation, form. | 13:01:03 |
| 5 | THE WITNESS: Yes. It would be | 13:01:12 |
| 6 | to the advantage of a distributor to use our | 13:01:13 |
| 7 | logo. It would be -- we've got a good | 13:01:15 |
| 8 | reputation, and most of them are very proud to | 13:01:19 |
| 9 | be associated. And they will display our name | 13:01:23 |
| 10 | on their trucks or on their letterhead. | 13:01:28 |
| 11 | Various ones do it differently but most of | 13:01:32 |
| 12 | them like an association. | 13:01:34 |
| 13 | BY MR. ROVENS: | 13:01:36 |
| 14 | Q My question was, would it in Marvin's view be | 13:01:36 |
| 15 | beneficial for the distributors to use | 13:01:40 |
| 16 | Marvin's logos and trademarks for the benefit | 13:01:44 |
| 17 | of Marvin; meaning, getting Marvin's name out | 13:01:48 |
| 18 | in the community and known? | 13:01:51 |
| 19 | MR. WINDLER: Object to the | 13:01:55 |
| 20 | form, foundation. | 13:01:55 |
| 21 | THE WITNESS: I would say that | 13:01:58 |
| 22 | would benefit us. At the distribution level, | 13:01:59 |
| 23 | it's a little less clear than when a dealer | 13:02:02 |
| 24 | uses our logo. In other words, a customer of | 13:02:04 |
| 25 | LightStyles. They often use our logos and our | 13:02:07 |

116

| | | |
|---|---|---|
| 1 | branding on their signage or in their | 13:02:12 |
| 2 | promotion.  That's a more direct advantage for | 13:02:15 |
| 3 | us. | 13:02:17 |
| 4 | BY MR. ROVENS: | 13:02:17 |
| 5 | Q   Okay. | 13:02:18 |
| 6 | A   And them, of course. | 13:02:19 |
| 7 | Q   Right.  Did Marvin or does Marvin have a | 13:02:20 |
| 8 |     co-op advertising program? | 13:02:30 |
| 9 | A   Yes. | 13:02:32 |
| 10 | Q   Okay.  Would you describe that for me? | 13:02:33 |
| 11 | A   As is the case with most manufacturers, we set | 13:02:38 |
| 12 |     aside a fund usually based on a percent of | 13:02:42 |
| 13 |     purchases for a distributor to use. | 13:02:45 |
| 14 |          Most of them, like LightStyles, would | 13:02:50 |
| 15 |     make the program available to dealers.  And | 13:02:52 |
| 16 |     so if hypothetically a dealer like, let's | 13:02:56 |
| 17 |     say, an ABC Lumber, wanted to advertise that | 13:03:01 |
| 18 |     they carried Marvin Windows in ad, they would | 13:03:04 |
| 19 |     put our logo in their ad and our name in | 13:03:10 |
| 20 |     their ad and might talk about the product. | 13:03:13 |
| 21 |     And then they would submit the ad to | 13:03:15 |
| 22 |     LightStyles and ultimately to us.  And we | 13:03:17 |
| 23 |     would pay for 25 percent of it, LightStyles | 13:03:22 |
| 24 |     would pay for 25 percent of it, and the | 13:03:26 |
| 25 |     dealer would pay for 50 percent. | 13:03:27 |

| | | | |
|---|---|---|---|
| 1 | | That's a very standard co-op program | 13:03:30 |
| 2 | | in our industry.  I think virtually all | 13:03:33 |
| 3 | | manufacturers have a similar program. | 13:03:35 |
| 4 | Q | Okay.  And did Marvin have that program in | 13:03:39 |
| 5 | | place from 1995 forward? | 13:03:42 |
| 6 | A | Yes.  Now, if there's been changes, might be | 13:03:45 |
| 7 | | subtle changes, I'm not clued in on it, but | 13:03:49 |
| 8 | | yes. | 13:03:54 |
| 9 | Q | Understood. | 13:03:54 |
| 10 | A | Generally. | 13:03:54 |
| 11 | Q | That's what I meant. | 13:03:55 |
| 12 | A | Yeah. | 13:03:56 |
| 13 | Q | All right.  And do you know whether | 13:03:56 |
| 14 | | LightStyles took advantage of the co-op | 13:03:58 |
| 15 | | advertising program that was in place at | 13:04:00 |
| 16 | | Marvin? | 13:04:02 |
| 17 | | MR. WINDLER:  Objection; | 13:04:03 |
| 18 | | foundation.  Vague as to time frame. | 13:04:03 |
| 19 | | THE WITNESS:  It's my | 13:04:06 |
| 20 | | understanding they did.  I wouldn't have | 13:04:06 |
| 21 | | firsthand knowledge.  I wouldn't have | 13:04:08 |
| 22 | | processed claims or anything. | 13:04:11 |
| 23 | BY MR. ROVENS: | | 13:04:12 |
| 24 | Q | Right.  Did Marvin express to LightStyles its | 13:04:12 |
| 25 | | expectation that LightStyles would | 13:04:20 |

| | | |
|---|---|---|
| 1 | know we can't take that risk. I think we all | 14:03:02 |
| 2 | need to talk. Elliot." | 14:03:04 |
| 3 | Do you see that? | 14:03:06 |
| 4 | A Yes. | 14:03:06 |
| 5 | Q All right. And do you recall having some | 14:03:06 |
| 6 | meeting with Elliot and maybe others about | 14:03:08 |
| 7 | what to do with respect to Mr. Slagle's | 14:03:11 |
| 8 | request about some accommodation as far as | 14:03:13 |
| 9 | payment? | 14:03:17 |
| 10 | A I don't recall. | 14:03:18 |
| 11 | Q Okay. Do you know whether anything was done? | 14:03:19 |
| 12 | MR. WINDLER: Objection; form. | 14:03:23 |
| 13 | Vague. | 14:03:23 |
| 14 | THE WITNESS: I don't. I have | 14:03:28 |
| 15 | a fuzzy memory of Elliot conversing quite | 14:03:30 |
| 16 | frequently with Bob, and I can't remember. | 14:03:33 |
| 17 | I -- I do remember working with him to try to | 14:03:38 |
| 18 | figure out what product was urgent and he | 14:03:42 |
| 19 | needed right away and which product wasn't. | 14:03:45 |
| 20 | And we would try to produce and ship the | 14:03:48 |
| 21 | product that was most critical for him to | 14:03:51 |
| 22 | receive based on his input, if we could. | 14:03:55 |
| 23 | BY MR. ROVENS: | 14:03:58 |
| 24 | Q Okay. But other than that, you don't recall | 14:03:59 |
| 25 | anything else? | 14:04:01 |

| | | | |
|---|---|---|---|
| 1 | A | I recall there would be occasion where he'd | 14:04:07 |
| 2 | | miss his payment. | 14:04:11 |
| 3 | Q | He meaning LightStyles or -- | 14:04:12 |
| 4 | A | LightStyles. He would be late. And I don't | 14:04:15 |
| 5 | | know that we were as stringent as we might | 14:04:19 |
| 6 | | normally be. I'm trying to remember. But I | 14:04:25 |
| 7 | | think we let him go over and take a couple | 14:04:29 |
| 8 | | discounts which we would not normally do. | 14:04:33 |
| 9 | | We -- we really wanted him to work through | 14:04:38 |
| 10 | | this successfully. | 14:04:41 |
| 11 | | MR. ROVENS: Let's mark this as | 14:04:55 |
| 12 | | 379. | 14:04:57 |
| 13 | | (Deposition Exhibit No. 379 was marked | 14:04:58 |
| 14 | | for identification) | 14:04:59 |
| 15 | BY MR. ROVENS: | | 14:05:09 |
| 16 | Q | Have you seen Exhibit 379 before today? | 14:05:09 |
| 17 | A | Yes. | 14:05:49 |
| 18 | Q | Okay. And this is an e-mail dated June 19, | 14:05:49 |
| 19 | | 2009, from Dawn Kvamme. She was your | 14:05:53 |
| 20 | | assistant at the time? | 14:05:57 |
| 21 | A | I don't recall when -- she had been at some | 14:05:58 |
| 22 | | point in time. I don't recall when -- when | 14:06:01 |
| 23 | | she stopped assisting me and I got a new | 14:06:03 |
| 24 | | assistant. | 14:06:08 |
| 25 | Q | All right. But in any event, Dawn is | 14:06:08 |

| | | | |
|---|---|---|---|
| 1 | | forwarding to you LightStyles sales | 14:06:11 |
| 2 | | comparison, correct? | 14:06:15 |
| 3 | A | Correct. | 14:06:15 |
| 4 | Q | And this is shortly after the letter from | 14:06:16 |
| 5 | | Mr. Slagle that we looked at and | 14:06:20 |
| 6 | | Mr. Larson -- | 14:06:23 |
| 7 | A | Yes. | 14:06:24 |
| 8 | Q | -- doing some analysis? Okay. | 14:06:24 |
| 9 | | And it says -- she says, "Noticed you | 14:06:26 |
| 10 | | have a meeting regarding LightStyles on | 14:06:29 |
| 11 | | Monday. Here are their sales just in case | 14:06:31 |
| 12 | | you need them." | 14:06:33 |
| 13 | | Do you see that? | 14:06:34 |
| 14 | A | Yes. | 14:06:35 |
| 15 | Q | Okay. And I take it you looked at the sales | 14:06:35 |
| 16 | | information when you received it? | 14:06:37 |
| 17 | A | I would think so. | 14:06:39 |
| 18 | Q | And do you recall the meeting that you had on | 14:06:40 |
| 19 | | June 20, 2009? | 14:06:45 |
| 20 | A | No. | 14:06:47 |
| 21 | Q | So you don't recall having a meeting with | 14:06:48 |
| 22 | | Larson or anyone else internally about | 14:06:49 |
| 23 | | LightStyles? | 14:06:52 |
| 24 | A | I recall meeting at various times to discuss | 14:06:57 |
| 25 | | them, but I don't recall a particular meeting. | 14:07:01 |

| | | | |
|---|---|---|---|
| 1 | Q | Okay. And in looking at the sales | 14:07:03 |
| 2 | | information for LightStyles? | 14:07:10 |
| 3 | A | Yes. | 14:07:11 |
| 4 | Q | You thought that that was a pretty nice chunk | 14:07:12 |
| 5 | | of business, correct? | 14:07:15 |
| 6 | A | It is. It's an important account. | 14:07:17 |
| 7 | Q | And you do recall that you had -- you at | 14:07:24 |
| 8 | | least had some meeting -- a meeting or some | 14:07:27 |
| 9 | | meetings about LightStyles after receiving | 14:07:30 |
| 10 | | the June letter, but you just can't recall | 14:07:33 |
| 11 | | specifically -- | 14:07:36 |
| 12 | A | Correct. | 14:07:36 |
| 13 | Q | -- who was there -- | 14:07:37 |
| 14 | A | Correct. | 14:07:38 |
| 15 | Q | -- or what was discussed? | 14:07:38 |
| 16 | A | Correct. | 14:07:39 |
| 17 | Q | Do you recall discussing any options whether | 14:07:43 |
| 18 | | it be supporting LightStyles in some fashion | 14:07:46 |
| 19 | | or making some type of plans if LightStyles | 14:07:51 |
| 20 | | were to go under, what would Marvin do? | 14:07:55 |
| 21 | A | It -- at this point in time 100 percent of our | 14:07:59 |
| 22 | | energy was focused on doing what we could to | 14:08:05 |
| 23 | | make sure they were successful. They were a | 14:08:09 |
| 24 | | significant chunk of business, and it was in | 14:08:13 |
| 25 | | our best interest for them to be successful. | 14:08:16 |

```
 1        And we were concerned.                         14:08:18

 2             And, you know, Duff and I wanted to       14:08:20

 3        work with them to the extent it was prudent.   14:08:23

 4        We didn't want to be foolish.  But we were     14:08:28

 5        talking, and I can't remember meetings or who  14:08:34

 6        was in them or whatever, but Duff and I were   14:08:37

 7        talking on an ongoing basis about doing what   14:08:38

 8        we could to help them succeed.  This was such  14:08:43

 9        an important account to us.                    14:08:48

10   Q    But you don't recall whether those            14:08:50

11        discussions involved extending credit terms,  14:08:52

12        for example?                                   14:08:57

13   A    Oh, no.  And I -- that may have come up in     14:08:58

14        discussion, but that call is made by Elliot.   14:09:03

15        I -- and his team.  I don't go there other     14:09:07

16        than to say this is an important account and   14:09:11

17        we need them to be successful.                 14:09:14

18   Q    So the decision about whether to extend        14:09:17

19        credit terms --                                14:09:21

20   A    Right.                                         14:09:22

21   Q    -- or allow late payments or schedule          14:09:22

22        payments in some fashion, you're saying that   14:09:28

23        at this time Elliot Larson had the authority   14:09:32

24        to make those decisions?                       14:09:35

25   A    Totally.  He doesn't report to me and never    14:09:37
```

| | | |
|---|---|---|
| 1 | | hand we're becoming aware that he's not | 15:30:32 |
| 2 | | collecting money from his dealers.  They're | 15:30:34 |
| 3 | | maybe not capable of paying him. | 15:30:37 |
| 4 | | And third, we're out there trying to | 15:30:39 |
| 5 | | work with him to assess viable potential | 15:30:40 |
| 6 | | dealers.  And he knew that.  He -- he was, | 15:30:46 |
| 7 | | like, help me. | 15:30:50 |
| 8 | Q | And when you were out there, you say you were | 15:30:51 |
| 9 | | out there working with them -- | 15:30:54 |
| 10 | A | Our salespeople, yeah. | 15:30:55 |
| 11 | Q | What you mean by that is you had salespeople | 15:30:56 |
| 12 | | traveling with LightStyles' employees | 15:30:59 |
| 13 | | visiting customers and dealers and things of | 15:31:01 |
| 14 | | that nature? | 15:31:03 |
| 15 | A | I believe -- | 15:31:04 |
| 16 | | MR. WINDLER:  Objection; form. | 15:31:05 |
| 17 | | THE WITNESS:  We did.  And | 15:31:06 |
| 18 | | in -- it's -- when we have a sales rep in a | 15:31:08 |
| 19 | | market area, that is something they do. | 15:31:10 |
| 20 | | That's part of their job.  But some of them | 15:31:13 |
| 21 | | maybe wouldn't be as sophisticated at | 15:31:16 |
| 22 | | assessing a dealer's ability, you know, their | 15:31:21 |
| 23 | | financial wherewithal, and in that case, we | 15:31:23 |
| 24 | | might -- you know, Duff personally might get | 15:31:27 |
| 25 | | involved and say, look at here's some accounts | 15:31:30 |

```
 1        that have potential to be good accounts.          15:31:32

 2              So that kind of activity is going on in     15:31:34

 3        the sales department, and that's -- that's        15:31:36

 4        not -- that's not uncommon.  The situation was    15:31:38

 5        a little uncommon.                                15:31:43

 6   BY MR. ROVENS:                                         15:31:44

 7   Q    And so this activity as described here            15:31:44

 8        obtaining this information and people in the      15:31:47

 9        marketplace trying to work with LightStyles      15:31:49

10        was for LightStyles' benefit you're saying?      15:31:51

11   A    Yeah.  Yeah.                                      15:31:54

12   Q    Okay.  And by May of 2011, however, you had      15:31:55

13        had discussions internally about taking over     15:32:00

14        LightStyles' business and taking it dealer       15:32:03

15        direct, correct?                                  15:32:06

16   A    I don't know if we had yet.  I don't recall       15:32:10

17        the sequence or the dates, but I do recall        15:32:15

18        becoming increasingly concerned about their       15:32:19

19        ability to weather the recession.                 15:32:23

20              It was getting complicated by the fact      15:32:25

21        that we weren't getting audited financials       15:32:27

22        when we asked for them.  And we started going    15:32:31

23        what -- we don't know how this is going to        15:32:33

24        play out.  Are they going to make it or not?      15:32:35

25        And if they -- if we can help them make it,       15:32:36
```

| | | |
|---|---|---|
| 1 | | what are our options here? And so we were | 15:32:39 |
| 2 | | working that. And they're going, what do we | 15:32:41 |
| 3 | | do if they can't? And we were looking at | 15:32:43 |
| 4 | | alternative distribution. | 15:32:48 |
| 5 | Q | All right. So to answer my question, do you | 15:32:50 |
| 6 | | know as of May of 2011, whether you had | 15:32:53 |
| 7 | | internally had discussions about taking | 15:32:57 |
| 8 | | LightStyles' business dealer direct? | 15:32:58 |
| 9 | | MR. WINDLER: Objection; asked | 15:33:01 |
| 10 | | and answered. | 15:33:01 |
| 11 | | THE WITNESS: Yeah, I don't | 15:33:02 |
| 12 | | recall when we would have first floated that | 15:33:03 |
| 13 | | as an idea. | 15:33:05 |
| 14 | BY MR. ROVENS: | | 15:33:07 |
| 15 | Q | Okay. And whenever it was that you first | 15:33:07 |
| 16 | | floated that as an idea, meaning taking | 15:33:14 |
| 17 | | LightStyles' business dealer direct, I take | 15:33:16 |
| 18 | | it you contacted Bob Slagle and told him you | 15:33:21 |
| 19 | | were considering taking it dealer direct? | 15:33:24 |
| 20 | A | No. | 15:33:26 |
| 21 | Q | You didn't? | 15:33:26 |
| 22 | A | No. We -- we weren't -- no. | 15:33:27 |
| 23 | Q | Okay. | 15:33:33 |
| 24 | A | No. But we did -- and I don't remember when. | 15:33:34 |
| 25 | | Our -- we didn't want to go direct into this | 15:33:37 |

227

| | | |
|---|---|---|
| 1 | market. That wasn't our first option. Our | 15:33:40 |
| 2 | first option was to see him successful. | 15:33:42 |
| 3 | Our second was to find another viable | 15:33:44 |
| 4 | two stepper. In fact, I think we even tried | 15:33:46 |
| 5 | to connect him with one or maybe they found | 15:33:50 |
| 6 | him on their own. There were at least two | 15:33:54 |
| 7 | independents that we tried to facilitate | 15:33:59 |
| 8 | discussions with Bob. | 15:34:04 |
| 9 | Q But in any event, whenever you had your | 15:34:06 |
| 10 | internal discussions about taking | 15:34:08 |
| 11 | LightStyles' business dealer direct, you | 15:34:09 |
| 12 | didn't notify Slagle that's something that | 15:34:12 |
| 13 | was under discussion at that time, correct? | 15:34:15 |
| 14 | A Why are you focused on that -- | 15:34:19 |
| 15 | MR. WINDLER: Object to the | 15:34:20 |
| 16 | form. | 15:34:20 |
| 17 | THE WITNESS: -- and not on our | 15:34:20 |
| 18 | discussions about Reeb or with Cassidy or the | 15:34:22 |
| 19 | other options and alternatives we were | 15:34:25 |
| 20 | floating? | 15:34:27 |
| 21 | BY MR. ROVENS: | 15:34:31 |
| 22 | Q You know, after the deposition if you want to | 15:34:31 |
| 23 | sit down and talk, I can talk to you about | 15:34:33 |
| 24 | that. | 15:34:35 |
| 25 | A Okay. | 15:34:35 |

| | | |
|---|---|---|
| 1 | Q | But at this point I just want you to answer | 15:34:35 |
| 2 | | my question. | 15:34:38 |
| 3 | A | No. | 15:34:39 |
| 4 | Q | Okay. Let's show you Exhibit 320 -- | 15:34:41 |
| 5 | A | We didn't call him up and say we're worried | 15:34:43 |
| 6 | | about you going bankrupt either or we're | 15:34:46 |
| 7 | | worried about, you know -- | 15:34:48 |
| 8 | Q | Right. That was all -- | 15:34:50 |
| 9 | A | Had a lot of exploratory discussions. | 15:34:51 |
| 10 | Q | That was all internal discussions within | 15:34:55 |
| 11 | | Marvin, correct? | 15:34:56 |
| 12 | A | Right. | 15:34:58 |
| 13 | | MR. WINDLER: Objection; | 15:34:58 |
| 14 | | foundation. | 15:34:58 |
| 15 | BY MR. ROVENS: | | 15:34:59 |
| 16 | Q | And those discussions were kept from | 15:34:59 |
| 17 | | Mr. Slagle, correct? | 15:35:00 |
| 18 | | MR. WINDLER: Objection; form. | 15:35:01 |
| 19 | | Foundation. | 15:35:01 |
| 20 | | THE WITNESS: I wouldn't | 15:35:03 |
| 21 | | characterize it that way. | 15:35:04 |
| 22 | BY MR. ROVENS: | | 15:35:05 |
| 23 | Q | Well, you didn't tell him. | 15:35:05 |
| 24 | A | No. | 15:35:06 |
| 25 | Q | Exhibit 320 previously marked, have you seen | 15:35:08 |

| | | |
|---|---|---|
| 1 | | Exhibit 320 before today? | 15:35:27 |
| 2 | A | Yes. | 15:35:29 |
| 3 | Q | And this is the day after Exhibit 319 that we | 15:35:30 |
| 4 | | just looked at, correct? | 15:35:32 |
| 5 | A | Yes. | 15:35:34 |
| 6 | Q | And Duff is writing to you on May 4, 2011. | 15:35:36 |
| 7 | | He says, "Susan, among other options we can | 15:35:39 |
| 8 | | consider for the mid Atlantic region would be | 15:35:42 |
| 9 | | Dealer Direct, Reeb, and as Brian mentioned | 15:35:45 |
| 10 | | Hastings." | 15:35:48 |
| 11 | | Do you see that? | 15:35:48 |
| 12 | A | Yes. | 15:35:48 |
| 13 | Q | And is this what you were just asking me | 15:35:49 |
| 14 | | to -- | 15:35:51 |
| 15 | A | Yes. | 15:35:51 |
| 16 | Q | -- ask you questions about? | 15:35:52 |
| 17 | A | Yes.  This was all part of the discussion, | 15:35:53 |
| 18 | | yes. | 15:35:54 |
| 19 | Q | Okay.  So now you'll have your opportunity. | 15:35:55 |
| 20 | A | Yes.  Thank you. | 15:35:56 |
| 21 | Q | You're welcome.  All right. | 15:35:58 |
| 22 | | So certainly by May 4 of 2011, one of | 15:36:00 |
| 23 | | the internal discussions that you were having | 15:36:03 |
| 24 | | was taking LightStyles' business dealer | 15:36:05 |
| 25 | | direct.  True? | 15:36:07 |

```
 1    A    Yes.                                             15:36:08

 2    Q    Okay.  And what discussions did you have         15:36:09

 3         concerning Reeb?                                 15:36:13

 4    A    Reeb was a two step distributor that has a       15:36:18

 5         really strong presence on the East Coast.  And   15:36:20

 6         we entertained them as a potential customer      15:36:26

 7         distributor in that marketplace because they     15:36:30

 8         had established relationships with the dealers   15:36:33

 9         in that marketplace.  In other words, they       15:36:37

10         were already selling products to a lot of        15:36:38

11         customers that LightStyles was.  And so for      15:36:40

12         that reason it would have been a natural.  And   15:36:43

13         it would have been a better option than going    15:36:47

14         dealer direct.                                   15:36:52

15    Q    All right.  And as of May of 2011, Marvin was    15:36:53

16         comfortable with Reeb's performance, I take      15:36:58

17         it?                                              15:37:00

18    A    In the Pacific Northwest, I don't know if I'd    15:37:06

19         say comfortable.  It wasn't very good.  But      15:37:09

20         their base was in the East Coast, and that's     15:37:14

21         where they were really good.                     15:37:16

22    Q    Okay.  So with respect to transitioning          15:37:17

23         LightStyles' business to another                 15:37:20

24         distributor --                                   15:37:22

25    A    Yes.                                             15:37:23
```

| | | | |
|---|---|---|---|
| 1 | Q | -- as of May 11 -- I'm sorry -- May 4, 2011, | 15:37:23 |
| 2 | | is that something that Marvin would have | 15:37:29 |
| 3 | | considered doing? | 15:37:32 |
| 4 | A | Yes. | 15:37:32 |
| 5 | Q | And did you or anyone else in Marvin, to your | 15:37:34 |
| 6 | | knowledge, have any discussions with Bob | 15:37:37 |
| 7 | | Slagle about transitioning his business to | 15:37:39 |
| 8 | | Reeb? | 15:37:43 |
| 9 | A | I don't remember who talked to who, but yes, | 15:37:46 |
| 10 | | there were discussions between LightStyles, | 15:37:48 |
| 11 | | Marvin, and Reeb. | 15:37:51 |
| 12 | Q | In 2011? | 15:37:54 |
| 13 | A | Yes. | 15:37:55 |
| 14 | Q | And what came of those discussions? | 15:37:57 |
| 15 | A | Okay. My very imperfect memory, and I'm | 15:38:03 |
| 16 | | getting everything second or thirdhand, but my | 15:38:06 |
| 17 | | memory of it is -- it was characterized to me | 15:38:08 |
| 18 | | and very likely by Duff that what Bob was | 15:38:12 |
| 19 | | asking for, because, you know, he wanted to | 15:38:17 |
| 20 | | sell the business -- | 15:38:20 |
| 21 | Q | Right. | 15:38:21 |
| 22 | A | -- was perceived to be totally unrealistic | 15:38:21 |
| 23 | | from Reeb's perspective. They were way too | 15:38:27 |
| 24 | | far apart. | 15:38:30 |
| 25 | | I think I remember Duff saying that | 15:38:35 |

```
 1    A    Correct.                                          16:04:39

 2                    MR. WINDLER:  Object to form.          16:04:41

 3    BY MR. ROVENS:                                         16:04:41

 4    Q    So you didn't work with him to try to revive      16:04:41

 5         the distribution agreement or anything like       16:04:43

 6         that?                                             16:04:45

 7    A    Oh, no.  We'd been doing that for months,          16:04:45

 8         trying to keep him going.                         16:04:48

 9    Q    Right.  But what I'm saying is, and just want      16:04:49

10         to make sure we're clear on this point, is        16:04:52

11         that prior to August 15, 2011, Marvin had not     16:04:54

12         notified LightStyles that it intended to          16:04:58

13         terminate, correct?                               16:05:02

14    A    That's correct.                                   16:05:03

15    Q    Okay.  And so on August 15, 2011, it              16:05:03

16         terminated effective that day immediately --      16:05:05

17    A    Immediate, yes.                                   16:05:08

18    Q    -- that minute?                                   16:05:09

19    A    That's correct.                                   16:05:09

20    Q    All right.  And Marvin took the territory         16:05:10

21         dealer direct, correct?                           16:05:19

22    A    Yes.                                              16:05:21

23    Q    It didn't engage in bringing in another deal      16:05:21

24         or the Reeb deal, the Hastings deal, none of      16:05:25

25         that, right?                                      16:05:27
```

| | | | |
|---|---|---|---|
| 1 | A | Right. | 16:05:28 |
| 2 | Q | Okay. And -- | 16:05:28 |
| 3 | A | There was another one in there, too, I'm | 16:05:30 |
| 4 | | pretty sure. And Duff would remember for | 16:05:32 |
| 5 | | sure. But I think we got a call from Cassidy. | 16:05:34 |
| 6 | Q | Okay. Well, it wasn't on any of the | 16:05:38 |
| 7 | | documents but -- | 16:05:40 |
| 8 | A | Yeah. | 16:05:41 |
| 9 | Q | -- I think you're right. I think Duff | 16:05:41 |
| 10 | | mentioned something about Cassidy maybe being | 16:05:42 |
| 11 | | interested. | 16:05:45 |
| 12 | A | Kevin Cassidy I'd forgotten that. | 16:05:45 |
| 13 | Q | I think that's true. I think Mr. Marshall | 16:05:49 |
| 14 | | testified to that. | 16:05:51 |
| 15 | A | Slowly it's coming. | 16:05:52 |
| 16 | Q | But instead of doing -- taking any of those | 16:05:52 |
| 17 | | options, Marvin took it dealer direct? | 16:05:55 |
| 18 | A | Correct. | 16:05:57 |
| 19 | Q | And in advance of taking the LightStyles | 16:05:57 |
| 20 | | territory dealer direct, did Marvin do any | 16:06:00 |
| 21 | | financial analysis of the impact it thought | 16:06:02 |
| 22 | | it might have on Marvin's bottom line? | 16:06:04 |
| 23 | | MR. WINDLER: Object to the | 16:06:08 |
| 24 | | form. | 16:06:08 |
| 25 | | THE WITNESS: No. I don't | 16:06:12 |

```
 1        recall that we did.  I think we did analysis        16:06:13
 2        on what it would cost to go in there, because       16:06:17
 3        the investment to go into a market like that's      16:06:22
 4        pretty heavy, and this was not a exactly a          16:06:24
 5        time when you want to do it.                        16:06:27
 6   BY MR. ROVENS:                                           16:06:28
 7   Q    And what -- when you say the investment to go       16:06:28
 8        into market like that is pretty heavy, what         16:06:31
 9        do you mean by that?                                16:06:33
10   A    Oh, you've got to hire outside people, outside      16:06:34
11        salespeople.  You got to hire field service        16:06:37
12        people.  Fortunately, we had people in the          16:06:40
13        office that a couple weeks earlier we had           16:06:43
14        started to train.  But it takes months to           16:06:46
15        bring somebody up to speed.                         16:06:47
16             And then you've got, you know, working        16:06:49
17        with the dealers on all kinds of training and       16:06:53
18        introductions and meeting new people and            16:06:56
19        travel.  And it's just costly to ramp up a          16:06:58
20        business.                                           16:07:02
21   Q    And one of the things in order to try to            16:07:03
22        mitigate that cost is Marvin decided that it        16:07:05
23        would hire some former LightStyles people who       16:07:09
24        already were in the sales areas and knew the        16:07:13
25        dealers and so on, correct?                         16:07:17
```

| | | |
|---|---|---|
| 1 | A   Yeah. | 16:07:19 |
| 2 | MR. WINDLER:   Object to form. | 16:07:19 |
| 3 | THE WITNESS:   The primary | 16:07:21 |
| 4 | driver for that was Bob asked us if we would | 16:07:21 |
| 5 | consider it. | 16:07:23 |
| 6 | BY MR. ROVENS: | 16:07:24 |
| 7 | Q   Right. | 16:07:24 |
| 8 | A   And we said sure, we'll interview them.   But | 16:07:24 |
| 9 | we stipulated we wanted to interview and make | 16:07:26 |
| 10 | certain that we -- | 16:07:28 |
| 11 | Q   Yeah.   I understand.   But part of the way to | 16:07:29 |
| 12 | mitigate that was -- | 16:07:31 |
| 13 | A   It was helpful. | 16:07:32 |
| 14 | MR. WINDLER:   Object to the | 16:07:33 |
| 15 | form. | 16:07:33 |
| 16 | BY MR. ROVENS: | 16:07:34 |
| 17 | Q   Yeah, to take -- hire some of the -- or | 16:07:34 |
| 18 | not -- I guess they were independent | 16:07:36 |
| 19 | contractors at least originally. | 16:07:38 |
| 20 | A   Yeah. | 16:07:40 |
| 21 | Q   But take them on.   So people had already been | 16:07:40 |
| 22 | in the marketplace and dealing with those | 16:07:42 |
| 23 | dealers and so on to try to make this | 16:07:44 |
| 24 | transition smoother, correct? | 16:07:46 |
| 25 | MR. WINDLER:   Object to the | 16:07:47 |

| | | |
|---|---|---|
| 1 | form. | 16:07:48 |
| 2 | BY MR. ROVENS: | 16:07:49 |
| 3 | Q   And then as I understand it -- again, I'm | 16:07:49 |
| 4 | looking at documents.  I don't really need to | 16:07:51 |
| 5 | mark these but I just need your testimony -- | 16:07:53 |
| 6 | is that this new region was named the | 16:07:55 |
| 7 | mid-Atlantic dealer direct region? | 16:07:56 |
| 8 | A   I believe that's right. | 16:08:00 |
| 9 | Q   So when I see on documents mid-Atlantic, | 16:08:02 |
| 10 | that's the former LightStyles -- | 16:08:05 |
| 11 | A   Uh-huh. | 16:08:06 |
| 12 | Q   -- territory, correct? | 16:08:06 |
| 13 | A   Correct. | 16:08:07 |
| 14 | Q   And do you know whether, after taking over | 16:08:23 |
| 15 | the LightStyles territory and taking it | 16:08:26 |
| 16 | dealer direct, has that territory been | 16:08:30 |
| 17 | profitable for Marvin? | 16:08:31 |
| 18 | A   I -- | 16:08:33 |
| 19 | MR. WINDLER:  Object to the | 16:08:34 |
| 20 | form.  Foundation. | 16:08:34 |
| 21 | THE WITNESS:  We can't do the | 16:08:36 |
| 22 | analysis by customer to determine that yet. | 16:08:37 |
| 23 | BY MR. ROVENS: | 16:08:49 |
| 24 | Q   Okay.  So you don't know? | 16:08:49 |
| 25 | A   No. | 16:08:51 |

***LightStyles, LTD. V. Marvin Lumber and Cedar Company***
USDC, Middle District of Pennsylvania
Case No. 1:13-cv-01510-WWC

| | | |
|---|---|---|
| STATE OF CALIFORNIA | ) | |
| | ) | |
| COUNTY OF LOS ANGELES | ) | |

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1500 Rosecrans Avenue, Ste. 418, Manhattan Beach, CA  90266.

On May 28, 2015, I served the following document(s):  **LIGHTSTYLES, LTD.'S EXCERPTS TO DEPOSITION OF SUSAN MARVIN CITED IN OPPOSITION TO MARVIN'S MOTION FOR SUMMARY JUDGMENT** on the interested parties as follows:

Christopher E. Fisher                    Attorneys for Marvin Lumber
Dennis Sheaffer                          and Cedar Company
Tucker Arensberg P.C.
2 Lemoyne Drive, Suite 200
Lemoyne, PA  17043
cfisher@tuckerlaw.com


Michael E. Obermueller                   Attorneys for Marvin Lumber
Joseph Windler                           and Cedar Company
Craig S. Krummen
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN  55402-4629
mobermueller@winthrop.com
jwindler@winthrop.com
ckrummen@winthrop.com

John M. Ogden                         Attorney for LightStyles, LTD and
257 E. Market Street                  Robert Slagle
York, PA  17403
ogdenjm@gmail.com

( )   **BY U.S. MAIL**:  I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.  I caused the above-referenced document to be mailed to counsel at the addresses listed above.

(X)   **CM/ECF NOTICE OF ELECTRONIC FILING**:  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

( )   **(BY ELECTRONIC MAIL)**:  I hereby certify that I served the above-described document on the interested parties in this action by attaching an electronic copy of that document to an e-mail addressed to the parties listed herein at their most recent e-mail address of record in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

( )   **BY FACSIMILE**:  I caused the above-referenced documents(s) to be transmitted to the noted addressee(s) at the fax number as stated.

        Executed on May 28, 2015 at Manhattan Beach, California.

 (X)   **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                              _ /S/ Tammy Cortez _____
                              Tammy Cortez